211 P.2d 131

McCOOL v. WARD et al.

No. 5188.

Supreme Court of New Mexico.

Nov. 3, 1949.

G. L. Reese, Sr. and N. R. Reese, Roswell, M. Rosenberg, Carlsbad, for appellant.

James W. Stagner and Thomas E. Lusk, Carlsbad, for appellees.

SADLER, Justice.

The plaintiff-appellant complains of a judgment rendered against her in a suit upon a complaint in which she asserted two causes of action. In the first she merely asked for a money judgment against the defendants, her father and mother, for money had and received to her use from the sale at an agreed purchase price of a ranch composed of lands owned individually by the plaintiff, on the one hand, and by the defendants, on the other, yet combined into a single unit for purposes of operation as a ranch. She claimed her lands had on them the only water on the ranch thereby giving them a value equal to one-half of the combined value of the separately owned lands. Accordingly, she sought recovery from defendants of the sum of five thousand two hundred fifty ($5250.00) dollars, one-half the purchase price of the ranch alleged to have been received by them and appropriated to their own use.

A somewhat different theory of recovery was put forward in the second cause of action. After alleging ownership of the same lands and the same interests in the ranch as set forth in the first cause of action, dating from about January 28, 1924, when the plaintiff received patents for her lands, it was claimed a partnership based on a verbal agreement between the plaintiff and defendants for operation of the ranch was entered into; that pursuant thereto the defendants lived on and operated the ranch from time to time, and according to plaintiff's belief, the defendants had also leased the ranch to certain named persons, as well as other unknown persons, for periods and rentals unknown to the plaintiff.

It was then averred that this situation with reference to operation and rental of the ranch continued over the period from 1924 to about February 8, 1941, when the ranch was sold, during which time the defendants took all the profits from the operation or rental of the ranch whereby they became liable to the plaintiff for her respective share, namely, one-half. Incidentally, it was claimed the defendants had taken the proceeds from the sale of the ranch and invested them in certain de-

scribed real estate in the City of Carlsbad, New Mexico. The plaintiff prayed for an accounting over the period mentioned during which defendants had enjoyed control and management of the ranch and that a trust be declared to exist in her favor on the property purchased by the defendants in the City of Carlsbad, as she claimed, from the proceeds of the sale of the ranch, to the extent of her interest therein.

The defendant, William W. Ward, alone answered, his wife having died pendente lite, admitting ownership by the plaintiff on February 8, 1941, the date of contract for sale of the ranch, of the record legal title to the lands of which she claimed such ownership in her complaint. He denied that at such time she was the equitable owner of said lands in their entirety with the improvements thereon. He also admitted ownership by himself and wife of the "W. W. Ward Ranch," consisting of the patented lands, the state grazing lease on a certain section of school land described in the complaint, and certain lands covered by allotment from Division of Grazing, Department of Interior of the United States, making up in the entirety a ranch of approximately fourteen (14) sections of land; admitting also that they along with the plaintiff signed a contract for the sale of the ranch to W. P. Murray of Lubbock, Texas, for ten thousand five hundred ($10,-500.00) and no/100 dollars on February

8, 1941, which amount the defendant W. W. Ward admitted he and his wife, his co-defendant, received in full during her lifetime.

The answer in so far as it related to the second cause of action amounted to a general denial of partnership, verbal or otherwise, being formed with plaintiff, or that any trust relationship on defendants' part ever existed toward plaintiff as to all or any portion of the proceeds of the sale of the ranch, and especially denied that the plaintiff had any right or interest, legal or equitable, in the real estate in Carlsbad purchased by the defendants.

The defendant then set up certain affirmative defenses, the first being that about the year 1903, and long before the lands later entered by the plaintiff had been surveyed, he and his wife entered upon a portion of such lands, then unsurveyed public lands of the United States, not subject to entry under the homestead laws of the United States; that by reason thereof they entered upon such lands, claiming the same under a "squatter's right," intending to make entry thereon when such lands were surveyed and thrown open to entry. They further alleged that following entry as squatters under the conditions shown, they developed water for livestock purposes and utilized said lands fully in the operation of a ranch embracing approximately the fourteen (14) sections of land

described in the complaint; and, that they erected valuable improvements on the lands so entered under a squatter's right, which at date of sale, as aforesaid, were of the reasonable value of three thousand five hundred ($3500.00) dollars.

The answer goes on to say that throughout this period the plaintiff, a daughter of the defendant and his wife, resided with them and eight other children, in a home which they maintained upon the lands; that such lands and the benefits therefrom were utilized by defendant and his wife for family living purposes during this period. Subsequently, as the answer proceeds, the lands were surveyed in the field and became subject to entry under the homestead laws of the United States but that defendant, W. W. Ward, having previously entered 120 acres. under the homestead laws was advised he could make no further entries under such laws; that by this time the plaintiff, being unmarried, of lawful age and still residing with defendant and his wife on the lands, made entry on the same under the public land laws of the United States and in due time received a patent therefor.

The defendant alleged that he and his wife furnished and paid for all improvements placed upon such lands enabling plaintiff to complete the proof necessary to secure patent therefor and further paid for all improvements which were upon the lands at time of sale of the ranch as described in the complaint, amounting at that time to three thousand five hundred ($3500.-00) dollars in value, no part of which had ever been repaid by plaintiff to defendant and his wife, notwithstanding the plaintiff had continued to reside on the land as a member of their family throughout the period.

The answer then sets up an agreement on plaintiff's part, later repudiated, entered into about the year 1929 when she was on the eve of leaving Carlsbad, to convey upon her return all interest in the lands patented by her to the defendant for the sum of one hundred ($100.00) dollars, which sum it was said he paid her at that time. In connection with the allegations touching this agreement, the answer discloses that for many years subsequent to issuance of patents to plaintiff, the income from the property and from all the ranching interests of defendant, was utilized for living purposes of defendant and his family, including the plaintiff, and with the knowledge on her part that she was being supported over a substantial portion of this period without cost to her but at a cost to defendant far in excess of any interest on her part in said lands at time of sale.

As to this, the first affirmative defense, the defendant prays, in the event the court should hold plaintiff entitled to participate in the sale, that he be permitted to offset

against any share awarded her, the value of the improvements in the sum of three thousand five hundred ($3500.00) dollars, the one hundred ($100.00) dollars paid her as consideration for her interest and the reasonable value of living costs advanced to her by defendant to the amount of three hundred sixty ($360.00) dollars.

As a second affirmative defense, the defendant pleaded that at time of sale of the ranch, as theretofore mentioned, the plaintiff joined her father and mother, the defendants named in the complaint, in a request to the purchaser to pay the full purchase price to her mother out of which there should be paid to the plaintiff the sum of one thousand ($1,000.00) dollars as full consideration to her for any outstanding interest she might possess in the lands, record title to which stood in her name at time of sale. The sum mentioned, it was alleged, had been paid the plaintiff in accordance with such agreement.

Finally, and as a third affirmative defense, the defendant pleaded the four year statute of limitations, 1941 Comp. § 27-104, as to the claims asserted by the plaintiff in her second cause of action under a verbal partnership and a trust relationship growing out of same.

At the beginning of the trial, it was stipulated in open court that the defendant, Rachel A. Ward, mother of the plaintiff had died since the complaint was filed and that the cause might proceed against the defendant William W. Ward alone, father of plaintiff, who would accept full responsibility for the conversions, if any, which might be shown to have been committed by her, the stipulation concluding: " * * * in other words, the case may proceed against him individually and be dismissed as to her, and all property which was held by her is now his property and he expects to be bound by her act as though it were his own."

It is upon issues framed by the foregoing pleadings that the cause was tried before the court without a jury. In the main, it resolved all material issues in favor of the defendant. Specifically, the trial court found in accordance with the affirmative defenses pleaded by the defendant that the land as to which the record title stood in plaintiff's name, consisting of 640 acres described in the complaint, was entered upon by William W. Ward and Rachel L. Ward, his wife, in 1903, long before it was thrown open to public entry following official survey; that they placed and fully paid for improvements upon the land to the value of approximately three thousand five hundred ($3500.00) dollars at no cost whatever to the plaintiff and for which plaintiff had never reimbursed them. These improvements consisted of a dwelling house, well, windmill, barn, cement tank, and other stock-raising improvements. The defendants resided upon the land with their chil-

dren, including the plaintiff, until about the year 1916, at which time the land was surveyed in the field and became open to entry.

Thereafter, the plaintiff, Myrtle Ward McCool, made entry on these lands under the public land laws of the United States, resided on them for the required period and patents therefor were duly issued to her by the United States. Prior thereto, however, and as well after the issuance of patents thereon, the defendant and his wife continued to utilize the lands and the improvements in conjunction with other lands, leases and stock-raising improvements owned by them, until February 8, 1941, when all of such lands and leases, including the lands patented by plaintiff, were sold for the sum of ten thousand five hundred ($10,500.00) dollars under contract of sale signed by the defendants and the plaintiff. The entire purchase price was paid over to the defendant's wife under joint instructions of the defendant, his wife and plaintiff, given to purchaser at time of sale. Ever since the defendants entered upon the lands in question as squatters about the year 1903, the plaintiff had resided intermittently with defendants and has so resided the greater part of her life. While thus residing she has paid no part of the living cost of the family. Even at the time of the trial of this action the plaintiff was residing with defendant in his home in Carlsbad and sharing no part of the expenses of the household.

In the year 1927 the plaintiff wished to make a trip to Arizona but was without funds to do so. At that time she offered to sell and convey to the defendant, William W. Ward, all interest in the lands patented by her for the sum of one hundred ($100.00) dollars which proposal he accepted and paid her the amount mentioned. As a part of this agreement, the plaintiff promised to convey the land to defendant upon her return from Arizona but thereafter consistently refused to do so. Later, however, and upon the sale of such lands for the sum of ten thousand five hundred ($10,500.00) dollars, as already mentioned, under instruments of sale signed by defendants in which the plaintiff joined, she agreed to accept the sum of one thousand ($1,000.00) dollars as the entire amount due her from the proceeds of the sale. Upon receipt of the purchase price the defendant and his wife paid to plaintiff the amount promised, which she accepted. Since that time the defendant has made gifts to her of additional sums in excess of the amount which she had agreed to and did accept as the amount to which she was entitled from the proceeds of said sale.

The court further found there was never any agreement of partnership between plaintiff and defendant for the operation of the ranch or upon any other basis for a division of interest between them in its operation; and in addition, that she never at any time conducted any livestock opera-

tions on the lands patented to her nor did she ever at any time have any livestock except a few head of calves given to her by her father and by friends. The findings were also against the plaintiff on her claim of a trust interest in certain residence properties and real estate located in the City of Carlsbad. Indeed, as to all of these properties, except lots 11 and 13 in Block 37 of Stevens Addition to said City, the purchase was found to have been made long prior to the sale of the ranch. Hence, none of the moneys arising from such sale could have gone into the purchase. As to the lots just described, the court found they were purchased subsequent to the sale of the ranch for a total consideration of two thousand five hundred ($2500.00) dollars which the defendants paid out of the proceeds of the sale.

The trial court made a single conclusion of law from the foregoing findings, to-wit: "1. That the plaintiff herein has been paid by the defendants *and* the entirety of the value of her interest in the ranch, the proceeds of which are involved in this action, and that the plaintiff should recover nothing of the defendant and her Complaint should be dismissed", and based upon the findings and conclusion made, adjudged the plaintiff should take nothing by her complaint. It was dismissed at plaintiff's cost. This appeal followed.

The first challenge to the correctness of the judgment below is presented under the plaintiff's Point 1 in which she claims the trial court erred in receiving evidence and making findings of fact thereon since they constitute a collateral attack on a United States patent. The evidence and findings counsel have in mind relate to the value of improvements placed on land patented by the plaintiff. The cases of Maxwell Land Grant Co. v. Santistevan, 7 N.M. 1, 32 P. 44; Chavez v. Chavez de Sanchez, 7 N.M. 58, 32 P. 137; Patterson v. Chaney, 24 N.M. 156, 173 P. 859, 6 A.L.R. 90; White v. Mayo, 35 N.M. 435, 299 P. 1068, 1069, and others are cited in argument under this point. These cases, at least some of them, hold generally that a purchaser from the government of public lands is entitled to the improvements on the premises when he acquires possession as being a part of the real estate. Public lands acquired under the homestead laws are deemed to have been acquired by purchase. Bardin v. Bardin, 51 N.M. 2, 177 P.2d 167; Buchser v. Buchser, 231 U.S. 157, 34 S.Ct. 46, 58 L.Ed. 166. Accordingly, so runs the argument, the improvements here involved being on the lands in question when the plaintiff received her patents therefor, any effort to claim such improvements, or the value thereof, in effect is an effort to impeach the patents by a collateral attack.

In making this argument, plaintiff's counsel do not correctly appraise the affirmative defense interposed by the defendant. Evidence concerning the improvements and the

findings based thereon constitute nothing more than inducement and background for the broader and fatal claim of ownership by her father and mother, the original defendants, through purchase from the plaintiff. It could matter but little to the defendant that improvements on public land after patent may not be removed or their value recovered by the one placing them there, where the sole claim to such improvements is by reason of a purchase of the lands. That is exactly the situation confronting the plaintiff here. The defendant claimed to be the equitable owner of the land itself through purchase from the plaintiff. Whether the proof sustains the finding is a matter yet to be determined. A consideration of plaintiff's very next point, the second one, brings us to a consideration of that question.

The second claim of error presented under the plaintiff's next point is that the evidence does not sustain a finding of an oral agreement with defendant in the year 1927 to sell and convey her interest in the patented lands to defendant for the sum of one hundred ($100.00) dollars. It is difficult to understand how counsel can urge this claim since a son of the defendant, a brother of the plaintiff, testified positively to the making of the offer to him by plaintiff which he was about to accept, when his father who was present, interrupted by saying he would take it and then and there paid over to her the amount agreed upon.

This offer was made on the eve of plaintiff's departure for a year's absence in Arizona and at a time when she needed money for the trip, according to the testimony of the witness. She never made any conveyance to the defendant, pursuant to her promise, or otherwise, as the undisputed testimony discloses. Obviously, this testimony supports a finding that the offer was made and accepted and the money paid over, if the court chose to believe it, as unquestionably the court did.

No doubt counsel's chief objection to the finding arises from the assumption that it is, or would be, relied upon as the basis for a transfer of her interest in the ranch. They interpose the objection that any right arising out of the alleged oral agreement was barred by the four year statute of limitations, 1941 Comp. § 27-104 and by laches, citing Patterson v. Hewitt, 11 N.M. 1, 66 P. 552, 55 L.R.A. 658, and Mosley v. Magnolia Petroleum Co., 45 N.M. 230, 114 P.2d 740, among other cases, on the subject of laches. But the doctrine of these cases, as well as the question of limitations, may be laid aside.

No reliance was placed by the trial court upon the oral agreement which it found to have been made as foreclosing the plaintiff's interest in the lands to which the legal title stood in her name under patents issued by the United States. This was but the recital of a single event in the long

history of plaintiff's connection with the land which helped to explain and serve as inducement to her final agreement to accept one thousand ($1,000.00) dollars of the sale price of the ranch as full satisfaction for her entire interest. It was the plaintiff's joinder with her father and mother in instruments for the sale of the ranch at an agreed price and more especially in the instructions to the purchaser to pay over the sale price to her mother from which the plaintiff agreed to receive and accepted the sum mentioned—these are the facts that combine to defeat a recovery.

The plaintiff, of course, challenges sufficiency of the evidence to sustain the finding that she agreed to accept one thousand ($1,000.00) dollars out of the sale price for her entire interest in the ranch. This is her third claim of error presented under her Point 3. Careful examination of the record satisfies us that there is substantial evidence to support the trial court's finding that the plaintiff did agree to accept the sum mentioned for her interest in the ranch. Counsel place greatest reliance in their argument on this point upon the fact that at one point in his testimony the defendant admitted his wife and daughter, the plaintiff, made some kind of agreement about the amount to be paid to the daughter out of the sale price but that he didn't know what it was. The defendant's testimony on this subject reads:

"Q. When you sold the ranch, did you have any kind of discussion with Mrs. McCool as to the amount that would be paid to her out of the sale proceeds? A. That was left up to her and my wife.

"Q. Were you present at anytime they made any arrangements with regard to that? A. I was there the day my wife deposited what money she got in the bank, and they made some kind of a deal but I do not know what it was.

"Q. In your Answer you have stated that it was agreed she would take one thousand dollars for her part; did you ever hear any such agreement between her and Mrs. Ward? A. Yes, sir, lots of times.

"Q. Where did you hear that? At the bank and at the house."

■ At the time of testifying the defendant was an enfeebled old man, past 83 years of age, who had suffered from a serious ailment a few years before which had confined him in an El Paso, Texas, hospital for a month. The plaintiff had actually accepted the sum of one thousand ($1,000.00) dollars out of the sale price from her mother. Her efforts to explain how she came to accept this money evidently failed to satisfy the trial court it was not received pursuant to the agreement testified to. It was for the trial court to appraise the evidence as a whole, reconciling apparent conflicts in the defendant's

testimony and to say whether such seeming conflicts were due to faulty memory incident to old age, or the giving of false testimony. Cf. Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864. The evidence supporting this finding does not impress us as being unsubstantial.

The conclusions reached dispose of all other contentions urged, especially the claim of partnership in the operation of the ranch and for an accounting, as well as the right to an equitable lien in plaintiff's favor on certain residence properties and lots in Carlsbad as having been purchased, in part, with funds belonging to plaintiff from the proceeds arising on sale of the ranch. Indeed, the court on an abundance of evidence found expressly there had never been any agreement of partnership oral or otherwise, between plaintiff and defendant. Furthermore, all the Carlsbad properties save one were purchased long before the ranch was sold and as to the one purchased afterwards, it was shown to have been purchased with funds belonging to the defendant and his wife, the plaintiff's parents, in which the plaintiff had no interest.

Finally, counsel for plaintiff seek to stamp the theories reflected in the findings here made with the uncertainty and inconsistency present in those made in the case of Loveridge v. Loveridge, 52 N.M. 353, 198 P.2d 444. We sense no parallel in the two cases. Apparently, counsel see in the finding of an oral agreement on plaintiff's part to sell and convey (unexecuted as to the agreement to convey) and the agreement to accept one thousand dollars of the sale price in full for all claim of interest in the proceeds of sale, the same uncertain and inconsistent theories of defense present in the findings in the Loveridge case. We do not think so. On the contrary, we consider them both definite and harmonious. As already said, the oral agreement to sell and convey, unexecuted as to the promise to convey, was never relied upon as divesting the plaintiff of her interest. Proof of it, however, was admissible for such bearing as it might have on plaintiff's willingness to make the later agreement she did make to accept one thousand dollars in full for all claim of interest in proceeds of the sale, the acceptance of which sum did divest her of all interest therein. We think the case was fairly tried and that the record discloses no harmful error.

The judgment of the district court will be affirmed and it is so ordered.

LUJAN, McGHEE, and COMPTON, JJ., concur.

BRICE, C. J., did not participate.