335 P.2d 567

Horace F. McKAY, Jr., Elmyra K. McKay, and Pacific Northwest Pipeline Corporation, Plaintiffs-Appellees,

v.

Enrique ESPINOSA and Margarito Lopez, Defendants-Appellants.

No. 6368.

Supreme Court of New Mexico.

Dec. 30, 1958.

Rehearing Denied March 3, 1959.

Melvin T. Yost, Claude S. Sena, Manuel A. Sanchez, Santa Fe, for appellants.

Catron & Catron, Santa Fe, for appellees.

PER CURIAM.

Upon rehearing heretofore granted, the opinion filed in this cause disposing of the appeal is now withdrawn and the one to follow is substituted therefor.

SADLER, Justice.

The question for decision in this appeal is whether an assessment for taxation of lands located in Rio Arriba County, New Mexico, described as

"The Southeast half (SE½) of Section Seventeen (17), Township Thirty (30) North, Range Five (5) West, N.M.P.M. 160 acres."

will support a deed by the state, after it has acquired title at a tax sale for delinquency of the assessed property as described, of that portion thereof known as the SE¼ of the same section, township and range, in School District 63, Rio Arriba County, New Mexico.

The trial court, upon stipulated facts before it, held that it would and quieted title in the plaintiffs, Horace F. McKay and Elmyra K. McKay, his wife, as the record owners under a tax deed on said premises and in Pacific Northwest Pipeline Corporation as the holder of an oil and gas lease thereon. As indicated, the

cause was tried before the court upon an agreed statement of facts, or stipulation of the facts, from which the court made findings of fact and drew conclusions of law, embodied in its decision filed in the cause. A decree in conformity with the findings and conclusions was framed and entered, for the revision and correction of which the defendants, Enrique Espinosa and Margarito Lopez, have prosecuted this appeal.

The decision of the trial court, embracing the findings of fact and conclusions of law reads, as follows:

"Court's Decision

"The Court adopts the following Findings of Fact and Conclusions of Law:

"Findings of Fact

"1. That for the year 1937 there was assessed in the name of Maria M. Valdez in School District 63 on the Tax Rolls of Rio Arriba County for said year, at page 316, Line 47, property described as follows: SE½ Sec. 17, Twp. 30, Rge. 5 W, 160 acres.

"2. That the taxes levied on the assessment so made for said year remained unpaid and became delinquent.

"3. That commencing on the 19th day of January, 1942, being the third Monday in said month, the Treasurer of Rio Arriba County pursuant to and in the manner prescribed by law, offered for sale all properties assessed for the year 1937 upon which the taxes for said year were unpaid and delinquent, including the property assessed and described in Finding No. 1 above set forth, and there being no other bidders therefor, the property so assessed and described was by operation of law sold to the State of New Mexico.

"4. Under date of January 20, 1942, there was issued by the said Treasurer of Rio Arriba County Tax Sales Certificate No. 2180 to the State of New Mexico for property described as: SE¼ of Sec. 17, Twp. 30 Range 5 W.

"5. That no redemption was effected within the period allowed for redemption, either of the property described in Finding No. 1 above and sold as in Finding No. 3 set forth, or of the property described in said Tax Sale Certificate No. 2180.

"6. That under date of July 11, 1946, there was made and issued by the then Treasurer of Rio Arriba County, Tax Deed No. 2180–C to the State of New Mexico for property located in said County and in School District 63 thereof, described as: '1937 (160 acres) SE¼ Sec. 17, Twp. 30 Rge. 5 W.'

"7. That thereafter, under date of January 7, 1948, the State Tax Commission of New Mexico made, executed and delivered its deed to Plaintiff Horace F. McKay, Jr., and Elmyra K. McKay, his wife, for that certain property located in Rio Arriba County described as: '1937 SE¼, Sec. 17, Twp. 30, Rge. 5 W.'

"8. That the plaintiffs Horace F. McKay, Jr., and Elmyra K. McKay, his wife, base their claim of title to and their rights and interests in the real estate described in paragraph 2 of their complaint, namely the SE¼ of Sec. 17 Twp. 30 N

"Rge 5 W. NMPM in Rio Arriba County, New Mexico, on the said deed of the State Tax Commission of New Mexico to them, in Finding No. 7 above referred to, and that the rights and interests of the Plaintiff Pacific Northwest Pipeline Corporation are based upon and depend upon the title of the Plaintiffs McKay.

"9. No claim is made in this case and no evidence has been introduced to the effect that any assessment other than that appearing at line 47, page 316 of the 1937 Tax Rolls of Rio Arriba County, referred to in Finding No. 1 above, was made of the land in question.

"10. That by stipulation of the parties hereto the only question presented to the Court for determination is the sufficiency of the description on the tax rolls for the year 1937, as set forth in Finding No. 1 above, to evidence and support a valid sale of the SE¼ Sec. 17, Twp. 30 N., Rge. 5 W., and to support the issuance of the Tax Sale Certificate No. 2180 for the property in said Certificate described, as set forth in Finding No. 4 above, the deed of the County Treasurer to the State of New Mexico No. 2180–C, in Finding No. 6 above referred to, for the property as therein described, and the deed from the State Tax Commission to Plaintiffs McKay, in Finding No. 7 above referred to, for the property therein described.

"11. That the description on the tax roll for the year 1937, set forth in Finding 1 above, reading 'SE½ Sec. 17, Twp. 30, Rge. 5 W.' in School District 63, Rio Arriba County, New Mexico, is such that the land so described can be identified and can be located on the ground without resort to or aid of data other than that contained in and pointed to by the description itself.

"12. That the description of property on the tax roll for the year 1937, set forth in Finding No. 1 above, reading SE½ Sec. 17, Twp. 30, Rge. 5 W. in School District 63, Rio Arriba County, New Mexico, is and was such

that were it given in a deed it would be sufficient to identify the real estate involved so that title thereto would pass.

"13. That the mere fact that the acreage given in the assessment so appearing at page 316, line 47 of the 1937 tax roll, is 160 acres, is not sufficient, even if erroneous, to render the description insufficient to identify the property assessed.

"14. The SE¼ of Section 17, Twp. 30, Rge. 5 W., falls wholly within and constitutes a part of the real estate described and assessed in Finding of Fact 1, herein above set out.

"Conclusions of Law

"1. That the Court has jurisdiction of the parties and of the subject matter.

"2. That the sale to the State of New Mexico in Finding No. 3 referred to was a valid and legal sale of property under a description thereof sufficient to identify it, as in Findings Nos. 11 and 12 above set forth.

"3. That the sale of the property described and assessed, as set forth in Finding No. 1, was a sale of all parts of the property so described, including that part thereof described as the SE¼ Sec. 17, Twp. 30 N., Rge. 5 W. by reason whereof the sale of the property, described and assessed as in Finding No. 1 set forth, was and is sufficient to evidence and support a valid sale of the SE¼ of said Section and to support the issuance of Tax Sale Certificate No. 2180 and of Treasurer's Deed No. 2180–C therefor, as well as the deed of the State Tax Commission to the Plaintiffs McKay for said SE¼.

"4. That Plaintiffs, under and by virtue of the deed from the State Tax Commission of New Mexico to them, in Finding No. 7 above referred to, became and are the owners of the SE¼ Sec. 17, Twp. 30 N., Rge. 5 W., N.M.P.M. in Rio Arriba County, New Mexico, subject, however, to the rights and interests of the Plaintiff Pacific Northwest Pipeline Corporation in Paragraph 3 of Plaintiffs' Complaint referred to.

"5. That as against the Defendants Enrique Espinosa and Margarito Lopez, Plaintiffs are entitled to and should be granted the relief prayed in their Complaint.

"s/ J. M. Scarborough
"District Judge"

Findings of fact Nos. 1 to 10, as above set out, are nothing more than a copy of the stipulated facts as signed by the attorneys for the respective parties and filed in the cause. Findings 11 to 14 represent ultimate facts deduced by the court from

those stipulated and from the testimony of certain witnesses produced by the respective parties. The conclusions of law, of course, are such as were deduced by the court from the facts stipulated and found and the testimony produced by the parties, supplementing same.

It thus becomes our somewhat difficult task to say from the facts so agreed upon and found by the trial court whether the description found on the assessment roll for 1937 of the SE½ of Section Seventeen (17), Township 30, Range 5 West, 160 acres, will support a sale by the State of the SE¼, same township and range, after ostensibly acquiring title to the SE½ of said section 17 at tax sale. The parties through their respective counsel have presented us with helpful briefs and the cause was ably argued by them upon submission. So, if the decisive question be not correctly decided, it will not be for a lack of help from counsel for the respective parties.

The governing statute relative to descriptions of real estate at the time of the questioned assessment is found in 1953 Comp., § 72–2–3 (L.1933, c. 107, § 4), which so far as material provides:

"Every person, firm, association or corporation shall, in each year, make a declaration of all property subject to taxation of which he is the owner or has the control or management, * * * *and a description of all real estate, such as would be sufficient in a deed to identify it so that title thereto would pass,* * * * *."* (Emphasis added.)

Furthermore, employing the questioned description the owner, herself, Maria Valdez, as plaintiffs insist, presumptively, she did, in returning her real estate for taxation in 1937, the critical year, made a diagonal halving of a quarter section, to-wit, the "SE½ Sec. 17, Twp. 30, Rge. 5 W., 160 acres." Thus our problem is to ascertain and declare whether the addition of the words "160 acres" after the described subdivision preceding same renders bad, fatally, the assessment in the description preceding it. We take judicial notice of the fact that a half section of land according to congressional subdivisions contains 320 instead of 160 acres. We may take judicial notice, as well, of the fact that southeast quarter of a standard section according to government survey lies wholly within the lines of the southeast one-half (SE½) of said section, representing a division of the section by drawing a diagonal line from the northeast corner to the southwest corner thereof.

While we may not resort to the name of Maria M. Valdez, the assessee, as an aid in identifying the property assessed, or intended to be assessed, it will be assumed in the absence of evidence to the contrary, of which there is none, that Maria M. Valdez, herself, complied with the law (1953 Comp., § 72–2–3) and made the declaration by fur-

247

nishing the description under which the property was assessed. It may, also, be presumed in further compliance with the law that her declaration included all the property belonging to or in her possession, or under her control or management. There is nothing in the record to refute these presumptions.

It is provided by 1953 Comp., § 72–2–12 that if any person shall fail to make out the required listing or declaration, the assessor shall make out a list for him. Only when the owner fails to do so is the assessor given the duty of supplying one for him. Here again, there being no evidence to the contrary, it will be assumed in compliance with the law that the questioned assessment was not made by the assessor but was actually made by the assessee, Maria M. Valdez, herself.

Furthermore, in the event of a refusal of any person, owning or in control of any property, to declare the same as required (1953 Comp., § 72–2–13) the duty then rests upon the assessor to make a true and complete list of the property and, when extending the taxes thereon, to add an amount equal to 25 per cent. thereof as a penalty. In the same section it is provided that where the assessor ascertains any property subject to taxation in his county has not been listed and valued as provided by law, he must prepare a schedule therefor in the name of the last owner and indicate on the schedule that the property described in it was "non listed" during the assessment period, and when extending the taxes against such property shall add thereto an amount equal to five per cent. of the value thereof.

There being no evidence before the court that either of the foregoing penalties were imposed, it is naturally to be presumed they were not imposed because there was no failure on the part of the owner, or the person in control of the property to make the required declaration as provided by the statute.

Thus confronted by the state of the evidence, including the presumptions aforesaid, we have Maria M. Valdez, the owner and the person required to make the declaration, furnishing a description to the assessor which he copied on the tax roll. The problem before the trial court, then, was to determine whether from the evidence before it the description so appearing on the tax roll met the requirements of 1953 Comp., § 72–2–3 by giving a description "such as would be sufficient in a deed to identify it so that title thereto would pass." This the trial court did by making its findings 11 and 12, set out hereinabove.

Finding No. 11 is to the effect that the description "SE½, Sec. 17, Twp. 30, Rge. 5 W" in School District 63, Rio Arriba County, New Mexico, is such that the land described therein can be identified and located on the ground without resort to or aid of data other than that contained in and

pointed to by the description itself. Finding No. 12 states the description is such that were it given in a deed it would be sufficient to identify the property so that title thereto would pass.

It is to be observed in these two findings the trial court not only uses almost the exact language of the statutory requirement calling for a description that were it given in a deed title thereto would pass, but they also contain the language of the interpretation given the statutory requirement in Heron v. Ramsey, 45 N.M. 483, 117 P.2d 242; Richards v. Renehan, 57 N.M. 76, 253 P.2d 1046, and other decisions of this Court which could be cited, declaring the property must be so described that it would enable one to locate it on the ground without resort to or aid of data other than that contained in and pointed to by the description itself.

Thus the matter was presented to the trial court and now is passed on to us for a determination whether the addition at end of the description of the phrase "160 acres" strikes down and invalidates a description otherwise sufficient and found so to be by the trial court. We realize, in approaching a solution of the problem, that to hold an assessment of the SE½ of Section 17, township and range indicated, is null and void, is to say as a matter of law, that a given section of a congressional subdivision of a government survey can not be so divided. This we are unwilling to do. We

as well as the trial court notice judicially the fact that a standard section of a government survey contains 640 acres. We also know, mathematically, that one-half of such a section contains 320 acres, whether it be the north, the south, the east, the west half; or, the southeast half, the northwest half, or the northeast half, or the southwest half.

So it is that when the southeast half of section seventeen (17) was sold to the state by operation of law on the fifth day of the sale, as was the case as to the land involved in Hughes v. Raney, 45 N.M. 89, 110 P.2d 544, and Ross v. Daniel, 53 N.M. 70, 201 P.2d 993, the state acquired title to *the entire southeast half,* not a mere quarter section.

It is earnestly insisted by counsel for the defendants that the "SE½" is a coined phrase, unknown to the professional surveyor and that without any doubt cast on its integrity as a valid assessment by the addition of "160 acres" at the end of the description, it must be condemned as bad. We are told it is a description unknown to the manual prepared by the use of government surveys by the Government of the United States.

We may indulge in much speculation and surmise as to the presence and meaning of the phrase "160 acres" at the end of the description and employ it to strike down and nullify an otherwise good description.

If we do so, however, we are now convinced we are invading the province of the fact finder to determine, as a fact, whether the assessed property could be located on the ground, by data furnished by it.

Several of the expert witnesses agreed they would have no trouble in locating the SE½ of a given section, being created by drawing a diagonal line from the northeast corner of the section to the southwest corner thereof. Some even went so far as to say they had seen such a description in use. Note this testimony of one of the experts produced by defendants, engineer Rademacher. He testified:

"Q. Mr. Rademacher, if you were given a description reading southeast half, Section 17, Township 30, Range 5 West and it was shown that that property that was so described was property in Rio Arriba County, New Mexico, could you identify that tract? A. Yes, I could.

"Q. Can you illustrate how you could identify it? A. Well from the Land Office Plat for instance that was presented here the rectangular pattern is shown showing all corners, I assume on that map, all corners of that section."

Whereupon the Map was handed to the Witness:

(Continuing with answer) "Therefore it is possible to establish or locate the existence of the southeast corner of that section, likewise the northeast corner and the southwest corner. The three corners being located with the description of the southeast half and would be half of that section by legal description and the diagonal line drawn through that should intersect the center of the section and divide that section into the southeast half and northwest half.

"Q. Now the diagonal line drawn from what point to what point? A. A diagonal line drawn from the southwest corner to the northeast corner.

"Q. How could you illustrate that on the board there, Mr. Rademacher? A. This would represent the boundaries of a section, in this case Section 17, this would be the northeast corner, this being north, this would be the southeast corner and northwest corner and southwest corner, the center of the section is normally attained in rectangular surveys as being equal distant points of that section. A diagonal line drawn through the Section should connect with the center of the Section. This then would be the southeast half, this would be the northwest half of that section, also the southeast half containing the southeast one quarter of the section as represented by these two dotted lines."

The expert, Davalos, testifying for plaintiffs gave similar testimony, although as

counsel for defendants claim, his testimony was not as unequivocal as that of witness, Rademacher. Nevertheless, whatever "doubt" be created by adding the phrase "160 acres" to the description derives from the act of either Maria M. Valdez or the assessor in placing it there, becoming thus a matter of intent to be resolved by the fact finder. This the trial judge did by his Finding No. 13 reciting it was not sufficient, even if erroneous to render the description insufficient to identify the property assessed.

 It was the function of the trial judge to appraise the conflicting testimony and draw inferences, reconcile differences where possible, and on the evidence as a whole find the facts. See Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864; McCool v. Ward, 53 N.M. 467, 211 P. 2d 131; Kutz Canon Oil & Gas Co. v. Harr, 56 N.M. 358, 244 P.2d 522; Apodaca v. Allison & Haney, 57 N.M. 315, 258 P.2d 711.

The deed purchased by the plaintiffs from State Tax Commission describes the Southeast quarter (SE¼) of said section 17, land lying wholly within the southeast half (SE½) of said section, the land to which the state acquired title by operation of law at the tax sale. It is only so much of the property acquired by the state at the tax sale, to-wit, the southeast quarter (SE¼) of section 17 with which we are here concerned and as to it the plaintiffs acquired a valid tax title.

Other questions are raised and argued which it is unnecessary for us to determine in view of the conclusion reached.

We think the evidence substantial to support the findings made by the trial judge on the material issues presented and the conclusions of law he deduced therefrom. Accordingly, there is no error and the judgment of the trial court must be affirmed.

It will be so ordered.

LUJAN, C. J., and McGHEE, COMPTON and SHILLINGLAW, JJ., concur.