## PRENTISS VS. BREWER.

A conveyance of "the south half" of a certain quarter section in this state would ordinarily be presumed to refer to the half quarter section whose corners were fixed by the government surveys.

But it may be shown by extrinsic evidence that the parties intended, by such description, one half of the *area* of the quarter section.

If the description in the deed were, "the south half, &c., according to the govern-

ment surveys," it would exclude the idea of any reference to quantity; and extrinsic evidence to show that there was such a reference would be inadmissible.

COLE, J., thought that the *defendant* in an action of ejectment, where both parties claimed under the same grantor, but the defendant under the elder grant, might show by extrinsic evidence, as an equitable defense, that the deed under which he claimed, and which described the land as "the south half" of a quarter section, was intended as a conveyance of one half *in quantity*, on the ground that if the words must be otherwise understood, there was a *mistake* in the execution of the deed.

Under the code, defendant in ejectment may set up any equitable defense.

APPEAL from the Circuit Court for *Jefferson* County.

Ejectment for about twenty-eight acres of land in the northwest fractional quarter of section 1, of a certain town in Jefferson county. Both parties claimed under one Burchard; the deed under which defendant claimed being of the *south half* of said quarter section, executed to one Potter in 1850; while that under which the plaintiff claimed was of the north half of said quarter, and was executed in 1855. The answer avers certain facts as to the manner in which Potter acquired title, which will appear from the opinion of the court. It also alleges that at the time of the conveyance by Burchard to Potter, the dwelling house and principal improvements of said Potter were situated on the tract claimed by the plaintiff in this action, and that it was understood and intended by Potter and Burchard that said conveyance did and should include said house and improvements; that it was also understood by them that the conveyance was of one half of the *quantity* of said fractional quarter section, without regard to the government survey or division of the land; that if the description in the deed did not convey half the quantity, it did not express the intention of the parties; that the tract in controversy would be south of an east and west line dividing the fractional quarter section into two equal parts; that when the plaintiff purchased the north half of said quarter section, he well knew that the defendant resided on the premises in dispute, and had valuable improvements thereon, and claimed title to the same

by deed from Burchard. The defendant therefore prays judgment, in case his deed shall be found not to express the intention of the parties thereto, that the same may be corrected, and that the plaintiff be adjudged to release all claim to or interest in the premises, &c.

On the trial, the plaintiff showed his title from Burchard, as above stated, for the "north half" of said fractional quarter section, and introduced evidence tending to show that the premises in controversy were in the north half of said quarter section according to the government survey, but were south of an east and west line dividing the quarter section into two equal parts. The defendant moved for a nonsuit, which was denied. The defendant then offered evidence to sustain the special allegations of his answer, but the court refused to admit any evidence for that purpose. Judgment for the plaintiff; from which the defendant appealed.

*Barber & Fribert*, for appellant.

*Enos & Hall*, for respondent:

The boundary line between the north half and the south half of the quarter section is not an east and west line through the same dividing its area into equal parts, but a line 80 rods north of and parallel to the east and west quarter line of said section, as indicated upon the plat introduced in evidence. 1 U. S. Statutes at Large, 464; 2 id., 313; 3 id., 566. The plat determines the position of the line in question. *Alexander vs. Lively*, 5 Monroe, 160; *Lewen vs. Smith*, 7 Porter, 428; *Davis vs. Rainsford*, 17 Mass., 207; *Magoun vs. Lapham*, 21 Pick., 135; *Blaney vs. Rice*, 20 Pick., 62; *Thomas vs. Patten*, 1 Shepley, 329; *Heaton vs. Hodges*, 2 id., 66; *May vs. Baskin*, 12 S. & M., 428. Proof of the special matter set up in the appellant's answer was properly excluded. It is not pretended that the parties ever contemplated any other description than the one inserted in the deed, but the mistake consists in the fact that the description does not include as much land as the parties supposed. This does not entitle the appellant to a

reformation of the deed.   Story's Equity, sec. 144 ; *Belknap vs. Sealey*, 14 N. Y., 143 ; 9 Paige, 168 ; *Stebbins vs. Eddy*, 4 Mason, 414.   Again, Burchard, whose deed is sought to be changed, was not before the court.   And again, if the answer makes a case for the consideration of the court, it is equitable in its nature, and should have been disposed of before the issue for the jury came on for trial.   It would certainly be anomalous to try the question made by the general denial of the appellant, and then allow him to reform his deed in order to enable him to try the same question over again.

The following opinion was filed in December, 1862.

*By the Court*, COLE, J.   We shall not stop to inquire whether the circuit court should have granted the nonsuit, because we are all clearly of the opinion that the testimony which was offered for the purpose of showing that the appellant was entitled to hold one half of the north-west fractional quarter, divided according to area or quantity, was improperly excluded, and therefore the judgment must be reversed for this reason, even if no other error existed in the case.   It appears that both parties claim the premises in controversy by title derived from Burchard, but the appellant by the elder grant.   It seems that Burchard purchased the entire quarter section from the territory of Wisconsin in 1847, and received a patent for the same, in which the land was described as " the north-west fractional quarter of section one, town seven north, range fourteen east, containing 166 60-100 acres."   For the purpose of establishing the facts set up in the answer, and of showing that the quarter section should be divided into equal parts by an east and west line through it, the appellant offered in evidence a written contract from Burchard to one Day and Young, dated in 1847, by which Burchard sold the fractional quarter section to them, and agreed to quitclaim his interest in the land upon being paid the consideration therein mentioned within three years from date.   Upon the contract was a written as-

signment by Day of his interest in the fractional quarter to one John Potter, and an assignment by John to Zebedee Potter: also a receipt thereon by Burchard of one year's interest and one half of the principal sum named in the contract: and likewise a written memorandum signed by Burchard, in which he stated that he was to make John Potter a deed of an undivided half of the land on the expiration of the contract.

Now when we consider the matter set up in the answer, and that the appellant had averred that Burchard, in November, 1850, on a part fulfillment of the contract, conveyed to Zebedee Potter the south half of the fractional quarter, intending by this language to convey one half of the land in quantity; that he was in the actual possession of the premises in dispute, had made valuable improvements on them, &c., it is very manifest that this written contract offered in evidence and excluded, together with the receipts and memorandum thereon, tended directly to prove his answer and establish the facts upon which he relied to defeat a recovery. This is very obvious. The question then is: Was it competent to show by this kind of proof, that by the language used in the deed one half of the fractional quarter according to area or quantity was intended to be conveyed to Zebedee Potter? The description, as stated in the answer, is, "the south half of said fractional quarter section." Could it be shown by the contract, from which it appeared that Burchard had sold the entire tract to two persons, who owned equal interests—and by an assignment of one of those interests to Potter—the receipt by Burchard of one half of the consideration money—his written agreement to make Potter a deed of an *undivided* half of the land —the taking possession by Potter in fact of the south half according to quantity and making improvements thereon—or by any other extrinsic matter, that one half in area was intended to be conveyed by this language? We are all of opinion that this

evidence was admissible, for the purpose of showing what was intended to be conveyed by the deed.

The respondent, in making out his case, had offered in evidence two plats of the section, with a deed from Burchard to one Hall, dated in 1855, conveying "the north half of the northwest quarter of section one," &c., and had deduced title through foreclosure proceedings on a mortgage given at the same time by Hall to Burchard. Now his argument is, that since the land was described as "the north half of the northwest quarter," or "the south half of said fractional quarter," the parties must be presumed to have conveyed with reference to the government surveys, and not in reference to quantity or area: and that consequently he has a right to claim all the land lying north of a line 80 rods north of and parallel to the east and west quarter line of the section, as indicated upon the plats introduced in evidence. These plats show that the quarter section is of an irregular shape, in consequence of Rock river running through its south-east corner, and that if it is divided as claimed by the respondent, he will have an hundred and nine acres out of the hundred and sixty-six.

While, in a philological sense, a conveyance of the north half or south half of a tract of land would mean a conveyance of a moiety or one of two equal parts of the tract divided by an east and west line, yet ordinarily, when land is described in this manner by numbers and quarters, we understand the language is to be construed with reference to the public surveys of the United States. It is well known that by this system of surveys, the lands are first surveyed into townships six miles square, by east and west and north and south rectilinear lines; and that the townships are again subdivided into thirty-six sections by lines running parallel to the township lines. At the corners of the townships, monuments are established, and other monuments are also erected at the proper corners of sections; and the corners of half and quar-

ter sections not marked on the surveys, are placed as near-ly as possible equi-distant from those two corners which stand on the same line. Brightley's Dig. Laws of the U. S., pp. 446–7. Persons were permitted to buy either entire sections, half sec-tions, quarter sections, half quarter sections or quarter quarter sections, in which case the corners marked in the surveys were established as the proper corners which they were intended to designate. Id., pp. 479 and 481. As a general thing in this state, lands are described in conveyances by numbers and quarters according to the subdivisions of the government sur-veys. It is therefore properly assumed as a general rule, that the parties intend that these surveys should be resorted to for the purpose of determining the location and quantity of the land conveyed. And in such a case it is undoubtedly true that the monuments established by the surveys are referred to to ascertain the boundaries. These, unquestionably, are the usu-al means resorted to to find the land. But although this is the general rule, yet that rule is not so inflexible as to exclude all other proof in regard to the intention of the parties. And while ordinarily it might be presumed, when a party convey-ed a south half of a quarter section, that the language was used in reference to the government surveys, still we think it is competent to show that the parties intended that one half of the quarter, according to area, should be conveyed. Had the description been " the south half" &c., "*according to the gov-ernment surveys*," of course it would exclude the idea that the parties had any reference to the quantity. The government surveys could then alone be resorted to to determine the quan-tity and location of the land. But this is not the language of the deed. The deed conveys " the south half of the fraction-al quarter," which may mean half in area quite as naturally as any government subdivision. Indeed, it is not inconsistent with the language used, to say that a moiety of the land was intended to be conveyed. But it is proposed to show by ex-trinsic circumstances just what the parties did mean by that

VOL. XVII—41

expression—that it was intended and understood to embrace one half in area. Was it not competent to do this? The language is vague, or rather it is as applicable to one half in quantity as to any government subdivision; and in such case we understand evidence is admissible to show what was intended. It comes within that class of cases mentioned by Prof. GREENLEAF, where parol evidence is resorted to to ascertain the nature and qualities of the subject matter of a written contract, to explain the circumstances surrounding the parties, and. thus to explain the contract itself by showing the situation of the parties in all their relations to persons and things around them. 1 Greenl. Ev., §§ 286, 287 and 288. See also the authorities cited upon this point by the chief justice, in the opinion in *Ganson v. Madigan*, 15 Wis.,144. But even if the evidence offered was not admissible for the purpose of explaining the meaning of the language employed, which is vague and indefinite, or which is as applicable to one half in area as anything else, yet I think it was clearly admissible on another ground. I think it was competent to show that the description of the land according to the government survey did not conform to the intention of the parties, which is assumed to be to convey one half in quantity, and therefore that there was a mistake in drawing the deed. I deem it safe to rest the admission of the evidence on this ground, but in this my brethren do not agree with me. At all events there can be no question that if the evidence showed clearly and satisfactorily that the description, when construed according to the government surveys, did not in fact embrace as much land as the parties supposed and intended should be conveyed, it would present the case of a mistake in the instrument: in other words, that the ordinary construction to be given the language did not conform to the meaning and intention of the parties. On this ground I think the evidence beyond all controversy to be admissible. But to this view it is objected that the appellant ought not to be permitted to make this proof or establish the special matters

stated in the answer, without first reforming the deed by a suit in equity ; and that this must be done before he can rely upon it even as a shield to his possession. But if there is a mistake in the description, does not this constitute an equitable defense to this action ? If the appellant shows that the land claimed in equity belongs to him, and was intended to be conveyed to him, is not this sufficient to defeat a recovery ? Since the adoption of the code, we suppose a defendant may avail himself of any defense whether it be legal or equitable. If any equities exist which show that the respondent ought not to recover on his legal title, they are available to protect the appellant in his possession. This has been expressly ruled by this court in *Fisher v. Moolick*, 13 Wis., 321. But whichever view is taken, it follows that the evidence was admissible.

The judgment of the circuit court is therefore reversed, and a new trial ordered.

On a second trial at the circuit, judgment was rendered for .the defendant, and the plaintiff appealed. The following opinion was filed May 30, 1864.

*By the Court,* PAINE, J. This case presents the same question it presented when here before. The argument of the appellant consisted entirely of an attempt to show the incorrectness of the former decision. And he claimed that after admitting that where land was described in a conveyance as the south half of a particular quarter section, it would be construed to refer *prima facie* to the south half according to the government survey, it was wholly inconsistent, and in violation of the settled rules of law, to admit evidence to show that the parties really intended a conveyance of the south half in quantity. For, said he, where the parties in their written contracts use words having a fixed, established meaning, parol evidence cannot be received to show that they were used in a different sense. This is undoubtedly a correct proposition; but the fallacy of the argument consists in the assumption that it was

admitted in the former opinion that the words in question here had any such fixed and established meaning as to make this rule applicable. So far from it, the decision was placed expressly upon the ground that the words may mean the one thing as well as the other. The south half of a quarter section is a fit and strictly accurate and proper expression to describe the south half in quantity. It may also mean the south half according to the government surveys. Now when a description may mean either of two things, and one as well as the other, how can it be said to have such a fixed meaning as to come within the rule relied on? Clearly it cannot, but it falls within the class of cases cited in *Ganson vs. Madigan*, referred to in the former opinion.

True, the appellant claimed that its meaning was fixed by the admission that such a description would be construed *prima facie* as referring to the government survey. But certainly that does not fix it. Where a phrase may mean two things, cannot the law, for convenience and certainty in construction, adopt a rule that it shall *prima facie* be held to mean one of them, without, at the same time, rendering it impossible to show that it was intended for the other? Can it not adopt a *prima facie* rule without, at the same time, making it conclusive? We fail entirely to see the inconsistency or unreasonableness of holding that this may be done.

The rule that ordinarily descriptions of this sort are presumed to have reference to the government surveys, has arisen from the fact that in most cases a description according to quantity and according to those surveys would be the same. If the surveys were entirely accurate it would be, and they are generally sufficiently accurate to warrant the adoption of the *prima facie* rule that the parties had reference to them and did not intend to examine into any slight discrepancies between them and the actual area. But when the question concerns a fractional quarter section, as in this case, it is entirely different. There the difference between a half in quantity and

a half according to the survey, may be very great, and that although the survey is entirely accurate. To hold that a mere *prima facie* rule of construction, founded upon a usual but entirely different state of facts, should be applied here, and there held conclusive, is required neither by reason nor law.

The judgment is affirmed.