253 P.2d 1046

## RICHARDS v. RENEHAN.
No. 5483.

Supreme Court of New Mexico.
Feb. 6, 1953.

Rehearing Denied March 17, 1953.

Charles B. Barker, Santa Fe, for appellant.

Watson, McIntosh & Watson, Santa Fe, for appellee.

COORS, Justice.

The plaintiff appeals from the decree of the lower court quieting title in the defendant and cross-complainant to two tracts of land in Santa Fe County.

The plaintiff sought to quiet his title to the South half of the Southwest quarter of Section 4, Township 16 North, Range 9 East, N.M.P.M. and to Lots 5 and 6 of said section. The defendant answered by general denial and filed a counterclaim seeking to quiet her title against the plaintiff's claims to the above described tracts, basing her claim of ownership upon a patent issued by the United States to Charles A. Siringo, in 1922, and other mesne conveyances thereof.

The plaintiff claimed ownership of the lands in question by virtue of certain tax deeds. With respect to the plaintiff's claim to the South half of the Southwest quarter of said Section 4, he presented the following instruments: (1) Tax Deed No. 1283, dated September 4, 1937, from the Treasurer of Santa Fe County to the State of New Mexico, which recites lands theretofore assessed to W. H. Waverick in School District No. 30, Santa Fe County, were sold for delinquent taxes, interest and penalties for the year 1933, in the amount of $8.09 and contains the following description:

"Lot 3-4 S½ SW¼ of Sec. 4 Twp 16 Rge 9."

(2) Deed from the State Tax Commission to R. D. Smith dated May 18, 1943, covering:

"Lots 3-4 S½ SW¼ of Section 4 Township 16 Range 9."

(3) Deed from Smith to the plaintiff of:

"The Lots numbered Three and Four, of Section Four, in Township 16 North, of Range 9 East, N.M.P.M., as patented to James Garland by the United States of America, containing 65.71 acres, according to the official survey thereof. Also the South Half of the Southwest Quarter, of Section Four, in Township 16 North, Range 9 East, containing 80 acres."

Under this series of conveyances, the plaintiff asserts title to Lots 3 and 4 of said Section 4, lots not involved in this appeal,

and the South half of the Southwest quarter of said section.

In support of his claim to Lots 5 and 6 of such section, plaintiff produced Tax Deed No. 2833 from the Treasurer of Santa Fe County to the plaintiff, of the date of February 6, 1946, reciting the property conveyed thereby had theretofore been assessed to Unknown Owners, situated in School District No. 4 in Santa Fe County, and had been sold in 1944 for delinquent taxes, penalty, interest and costs for the year 1942 in the total sum of $52.70, which deed contained the following description:

· "The SE¼ NW¼, and the N½ SW¼, Sec. 4–16–9."

It was the contention of the defendant in the lower court, and reiterated here in support of the judgment in her favor, that her interests in the lands involved could not be forfeited under the descriptions employed in the assessments on the tax roll books and in the tax deeds brought forward by the plaintiff.

The lower court found there was a clear chain of title from the United States to the defendant to the lands in question; that the assessment roll descriptions and tax deeds based thereon failed to describe and were not evidence of ownership by the plaintiff of the properties described in the complaint; that the plaintiff's exhibits, being photostatic copies of official plats on file with the United States Land Office, did not serve to identify the land described in the complaint by means of data furnished by the description in the tax deeds and assessment rolls. The court then concluded title to the lands set out in the complaint should be quieted in the defendant as against the claims of the plaintiff.

 We are called upon to determine whether the judgment of the lower court is supported by substantial evidence. Other assignments of error will be referred to in the following paragraphs.

The plaintiff's first two points on this appeal assert the official plats of public surveys filed in the United States Land Office are the necessary and sole guides for the determination of the location and area of any tract of land surveyed under the system of public surveys; that the abbreviations "T." and "Twp.", "R." and "Rge." must be taken to mean, respectively, "Township" and "Range"; and that since all townships are north and all ranges east in Santa Fe County, the court may by judicial notice complete the descriptions in the assessment rolls and tax deeds to read "Township 16 North, Range 9 East, N.M. P.M."

The defendant concedes the general recognition of these principles. It is stated in 26 C.J.S., Deeds, § 100, subd. p, Government Subdivisions:

· "In some jurisdictions lands are usually described in deeds according to

subdivisions of the government surveys, and, when the description refers to sections and subdivisions of sections, ordinarily government sections and subdivisions are meant. In case of a description by sections and subdivisions of sections, usually the language of the description is to be construed with reference to the public surveys of the United States in order to identify the land conveyed, and such land is conveyed as is situated within the designated sections as surveyed and platted by the government."

See, also, 16 Am.Jur., Deeds, Sec. 422, at p. 678; Prentiss v. Brewer, 1864, 17 Wis. 635, 86 Am.Dec. 730; Desha v. Erwin, 1925, 168 Ark. 555, 270 S.W. 965; Brannan v. Henry, 1905, 142 Ala. 698, 39 So. 92; Turner v. Union Pac. Ry. Co., 1892, 112 Mo. 542, 20 S.W. 673. And we will take notice that in modern usage the terms "Township" and "Range" are frequently abbreviated.

However, it is the contention of the defendant, and we believe the position of the lower court, that even aside from the use of abbreviations in the description on the tax roll and in the deeds, and aside from the failure of said descriptions to specify the direction of township and range, the assessments, deeds and data contained therein, together with the plats offered by the plaintiff do not serve to identify the tracts set out in his complaint.

Our first concern is with the sufficiency of the description in the assessment, for that is the very foundation for the levying and collection of taxes and sale for delinquent taxes. Baltzley v. Lujan, 1949, 53 N.M. 502, 212 P.2d 417, 419. In the last cited case we held "The assessment of property for taxation is one of the essential steps leading up to a sale for taxes. If an assessment is void it follows inevitably that the sale based upon such assessment is likewise void."

Section 76–203, 1941 Compilation, Ch. 107, Sec. 4 Laws of 1933, provides for the declaration of property subject to taxation in the following language:

"* * * Such declaration shall be made of all property * * * and it shall show all the property belonging to, claimed by, or in the possession or under the control or management of, the person making the declaration * * * together with a statement of the county in which the property is situated or which it is liable to taxation, and *a description of all real estate, such as would be sufficient in a deed to identify it so that title thereto would pass,* * * *." (Emphasis ours.)

This provision is, for present purposes, identical with Sec. 203, Ch. 133, Laws of 1921, and Sec. 141–203, 1929 Compilation. In Heron v. Ramsey, 1941, 45 N.M. 483,

117 P.2d 242, 246, in construing Sec. 141–203, 1929 Compilation, we declared:

"Property may be legally taxed in this state, whether listed in the name of the owner, an unknown owner, or one not connected with the title. The statute requiring '*a description* * * * such as would be sufficient in a deed to identify it so that title thereto would pass,' and applying to all assessments however listed, and to be aided only 'by means of data furnished by the *description itself*,' irrespective of whether it is listed in the name of the owner, named or unknown, or one having no interest in the property, * * * *."

It has thus long been the rule in this state that regardless of whether the property is listed for assessment by the owner, or by the assessor in the name of a former owner, or to an unknown owner, the description must be sufficient, aided by data furnished by it, to identify the property. Nor can an incorrect description in the assessment be corrected by informal notations on the tax rolls or by issuing a deed with a correct description to property formerly assessed and sold under an incorrect description. Baltzley v. Lujan, supra. While the description itself need not describe the property with utmost precision; still, it must be sufficient to do so aided only by data furnished by it. Chavez v. Trujillo, 1942, 47 N.M. 19, 132 P.2d 713; Heron v. Ramsey, supra; Dickerson v. Montoya, 1940, 44 N.M. 207, 100 P.2d 904; Lawson v. Hedges, 1933, 37 N.M. 499, 24 P.2d 742; and Eaves v. Lowe, 1931, 35 N.M. 610, 5 P.2d 525. The test of the sufficiency of the description is not that of a deed *inter partes,* but that of a conveyance in invitum. Lawson v. Hedges, supra, and Eaves v. Lowe, supra.

The assessment on which Tax Deed No. 1283 is based is as follows:

"School District No. 30
Name of School District Agua Fria
Name and Address of Property Owner
 Waverick W. H. Unknown

| Description | Blk. Sec. | Twp. | Rge. | Number acres |
|---|---|---|---|---|
| Lot 3–4 S½SW¼ | 4 | 16 | 9 | 145" |

Photostatic copies of three official plats of governmental surveys of Section 4 were introduced in evidence, the first being the plat of the survey of 1880; the second, the plat of survey accepted in 1895; and third, a plat of resurvey of small holding claims accepted 1917. It was not shown these were the only plats of the said section, or

that the latest of them was the most recent plat on file.

The first plat discloses Lots 3 and 4 in Section 4, lying north of the South half of the Northwest quarter, Lot 3 having an area of 39 acres and Lot 4 containing 26.71 acres. No division line for the Southwest quarter is projected on this plat, but a regular Southwest quarter of 160 acres is shown.

The second plat in point of time shows the projection lines for the South half of the Southwest quarter, containing 80 acres, but does not show any Lot 3 or 4.

Likewise, the third plat shows the South half of the Southwest quarter as a regular subdivision, but does not show Lot 3 or 4 as located on the plat of the 1880 survey; it does disclose a Lot 4, however it is placed to the left of the west boundary of Lot 4 as shown on the plat of the 1880 survey.

Guy P. Harrington, a retired regional cadastral engineer introduced as an expert witness, testified as follows in response to a question concerning the different assumptions that could be made with respect to the description reading "Lot 3–4 S½ SW¼ Sec. 4, etc.":

"A. * * * one could interpret the description as meaning that Lots 3 and 4 comprise the S½ SW¼, or are identical with it. In such a case, however, the description should be written Lots 3–4 (S½ SW¼) of Section 4.

Second: Lots 3 and 4 could be within or situated in the S½ SW¼ in such case, the figures S½ SW¼ would be informative only as to the location of Lots 3 and 4. However, this description would require the interpolation of an additional word or words between the Lots and the fractional section, so as to read, as follows: Lots 3–4, in or within or situated in or lying within the S½ SW¼ of Section 4. Third: The description could be interpreted as Lots 3 and 4 of Section 4 and the S½ SW¼ of Section 4. This interpretation were to (would) require at least a comma between the Lots and the fractional section, or an 'and' in lieu of the comma so that the description would be written Lots 3–4, S½ SW¼ of Section 4, or Lots 3–4 and S½ SW¼ of Section 4."

Therefore, in the absence of other data in the description to narrow the limits of possible interpretation, the description might mean three distinct things.

The data of "School District No. 30" does not clarify the situation, for it was uncontroverted that Section 4 should have been assessed in School District No. 4. Nor does the data "Waverick W. H. Unknown" avail the plaintiff, for although there was some indication a W. H. Maverick at one time owned Lots 3 and 4 in Section 4, there was no claim he ever had any connection with the South half of the

Southwest quarter of Section 4. The data "Number Acres 145" is somewhat persuasive in view of the fact the total acreage of Lot 3, one of the Lots 4 and the South half of the Southwest quarter is 145.71 acres; but we cannot arbitrarily say it is the Lot 4 with 26.71 acres which was covered by the assessment, rather than the other Lot 4 designated within the section, presumably by error. In any case, even if the acreage were exactly the same, we would be reluctant to say this circumstance alone was sufficient to establish that the description on the tax roll was the same as that set out in the complaint. It is our conclusion the trial court correctly denied the claim of the plaintiff to the South half of the Southwest quarter of Section 4, and that such action is amply supported by the evidence.

The problem presented with respect to the plaintiff's claim of ownership of Lots 5 and 6 of Section 4, Township 16 North, Range 9 East, N.M.P.M., is, stated simply, whether said lots may be claimed under the description in Tax Deed No. 2833, which reads as follows: "The SE¼ NW¼, and the N½ SW¼, Sec. 4–16–9." It is to be noted ownership of the Southeast quarter of the Northwest quarter of Section 4 is not here in dispute.

The plat of 1880 shows projection lines for a regular Southwest quarter within Section 4.

The plat of 1895 shows projection lines for a regular South half of the Southwest quarter of said section, but shows no such lines for the lands immediately north of the South half of the Southwest Quarter. Instead, it discloses Lots 5 and 6 immediately north of the South half of the Southwest quarter and above these lots are the surveyed lines for portions of four irregularly shaped small holding claims.

The plat of the re-survey of small holding claims of 1917 again reflects the portions of four small holding claims and Lots 5 and 6, as shown on the plat of 1895.

When our territory was ceded to the United States, large numbers of persons had been cultivating, living upon and held claims to tracts of irregular sizes. In order to protect these interests, as provided under the Treaty of Guadalupe Hidalgo, 9 Stat. 922, approved 1848, provision was made for the mode and manner of proving such claims. The procedure established by Act of February 21, 1893, 27 Stat. 470, amending Act March 3, 1891, 26 Stat. 854, being the Act establishing the Court of Private Land Claims, was, in part, as follows:

"* * * in the case of townships heretofore surveyed in the Territories of New Mexico, * * * all persons who, or whose ancestors, grantors, or their lawful successors in title or possession, became citizens of the United

States by reason of the treaty of Guadalupe Hidalgo, * * * and who have been in the actual continuous adverse possession of tracts, not to exceed one hundred and sixty acres each, for twenty years next preceding such survey, shall be entitled, upon making proof of such facts * * * to enter * * * such subdivisions * * * as shall include their said possessions.

" 'After a claim of the character described shall have been filed as directed * * * and it shall appear that a tract claimed as aforesaid is of such shape that the claimant can not readily secure his interests by an entry by legal subdivisions of the public surveys, the Commissioner of the General Land Office may cause such claim to be surveyed * * *.

" ' * * * He (the deputy surveyor, after proper posting) shall then proceed to establish the lines of such possessions in the township as seem to him to be valid, · properly connecting the lines thereof with the lines of public surveys, and he shall return the aforesaid proofs to the surveyor-general with the field notes of such claims and possessions. The surveyor-general shall then, upon his approval of said proofs and field notes of surveys, cause the said claim or claims to be platted, and numbered as a lot or lots of the section or sections in which such claim or claims are situated, and shall transmit a duplicate of the amended plat to the General Land Office and a triplicate thereof to the proper district land office, after which the land claimed as aforesaid may be entered as a lot or lots by the number or numbers designated upon the amended township plat.' "

So, in the section under consideration, that portion of land north of the South half of the Southwest quarter was surveyed into four portions of irregularly shaped small holding claims with title approved in separate owners. After these tracts were surveyed out, there remained, as public land, a tract immediately north of the South half of the Southwest quarter of Section 4, which was, upon the survey, divided into lots designated Lots 5 and 6. Such designation is in accord with the general principles of the system of rectangular surveys, where, due to the intrusion of rivers, lakes, or national monuments, etc., over and within sectional lines, regular sectional subdivisions are impossible. See Manual of Instructions for the Survey of the Public Lands of the United States, 1947; and Clark, Surveying and Boundaries.

Plaintiff's witness, Mr. Frank L. Wood, Chief Clerk of the United States Land Office in Santa Fe for many years, testified on cross examination as follows:

"Q. And what lies immediately south of those small holding claims? A. Two fractional subdivisions designated as Lots.

\* \* \* \* \* \*

"Q. Now, Mr. Wood, if you were required to describe the property shown on this map as Lots 5 and 6, how would you describe it? A. I would describe it as Lots 5 and 6, containing so and so many acres.

"Q. But would you designate what Section and Township they are in? A. You mean for a complete description of those two lots? Well, it would be described as Lots 5 and 6 of Section 4, Township 16 North, Range 9 East.

"Q. And could you properly describe it as N½ SW¼ of Section 4, Township 16 North, Range 9 East? A. Since these small holding claims were surveyed within that area there has technically been no such description as the N½ SW¼.

"Q. So that a description of the N½ SW¼ of Section 4, would not properly describe Lots 5 and 6, Section 4, would they? A. It would not be a correct description for them, no."

While a conveyance to the North half of the Southwest quarter of Section 4 might operate, *inter partes,* to convey title to whatever property the grantor owned within the boundaries projected on a regular section plat, still that is not the test in the matter of tax deeds. In Lawson v. Hedges, supra [37 N.M. 499, 24 P.2d 743], we said:

"It is not necessarily to be drawn from the statute that a description sufficient in any deed, and in any kind of controversy, will be sufficient in an assessment. It is more readily to be inferred that the deed referred to in the statute is a tax or other conveyance in invitum. \* \* \*

"Judge Cooley says that generally a description will be sufficient, if the same description would suffice in a 'conveyance between individuals.' But he goes on: 'It is, nevertheless, possible for cases to arise in which such a criterion would be an unsafe one to apply. In a deed which one executes for the purpose of conveying a particular description of land, if errors of description occur, they may well be rejected and the deed sustained, if, after rejecting them, a sufficient description remains to identify the land intended; because the erroneous circumstances which were added could not have misled the party conveying, who, all the time, had in mind a particular parcel which the erroneous particulars did not fit. But the same errors in a description prepared by another might very likely mislead the owner, who would be informed of no error, and who must, from the descrip-

tion alone, discover what land was intended. The same may be said of any imperfection in the description; the owner, if it has been prepared by himself, will read it in connection with his own knowledge of those surrounding circumstances, in the light of which he has framed it; but an equally imperfect description, prepared by another and accompanied by any such circumstances, would fail to convey to his mind any idea that his own land was intended. * * * The purposes in describing the land are: First, *that the owner may have information of the claim made upon him or his property;* second, that the public, in case the tax is not paid, may be notified what land is to be offered for sale for the non-payment; and, third, that the purchaser may be enabled to obtain a sufficient conveyance. If the description is sufficient for the first purpose, it will ordinarily be sufficient for the others also.' Cooley on Taxation, 4th Ed. § 1175." (Emphasis ours.)

The very heart of the requirement of an adequate description is notice to the owner of the claim made against him or his property, and we cannot say notice of a claim of taxes due upon lots within a section can be predicated upon notice that taxes are due upon a regular division of

that section. Indeed, we cannot assume the taxing authorities would ignore the duly filed official plats in the public land office and arbitrarily impose a tax upon a regular sectional subdivision, when, in fact, no such regular sectional subdivision exists. We might well conjecture the tax was intended to be imposed on other lands within the section, or that the designation of the section number itself was erroneous.

■ The plaintiff contends lastly his right to the lands in question may not be attacked under the provisions of our curative statute, Sec. 76–720, 1941 Compilation. Admittedly taxes on the lands in question were not paid for the years' delinquencies for which they were sold, but our court has already declared the provisions of our curative statute contemplate a valid assessment, and in the absence of such, can have no operation. N. H. Ranch Co. v. Gann, 1938, 42 N.M. 530, 82 P.2d 632, on rehearing, 82 P.2d 639; and Lawson v. Hedges, supra. For similar holding under earlier statutory provisions, see King v. Doherty, 1927, 32 N.M. 431, 258 P. 569; and Manby v. Voorhees, 1921, 27 N.M. 511, 203 P. 543.

The case of De Gutierrez v. Brady, 1939, 43 N.M. 197, 88 P.2d 281, is cited in support of Plaintiff's claim this controversy is governed by our curative statute. It is sufficient answer to point out that opinion states the plaintiff, who there attacked the tax

deed, acquiesced in the view the assessment met the requirements of the statute.

The judgment of the lower court will be affirmed, and it is so ordered.

