559 P.2d 415

Margie C. BAKER, now Margie C. Gooden, Plaintiff-Appellant,

v.

Carl D. BAKER, Defendant-Appellee.

Earl W. BAKER et al., Plaintiffs-Appellees,

v.

Margie GOODEN, formerly known as Margie C. Baker, aka Margie Corrine Baker, aka Margerie C. Baker, Defendant-Appellant Cross-Appellee,

v.

Carl D. BAKER, Involuntary-Plaintiff Cross-Complainant-Appellee Cross-Appellant,

v.

Earl W. BAKER et al., Cross-Defendants-Appellees.

Nos. 10951, 10952.

Supreme Court of New Mexico.

Jan. 27, 1977.

Beall & Crider, Charles J. Crider, Albuquerque, for plaintiff-appellant Margie Gooden.

Duhigg & Cronin, Bruce P. Moore, Albuquerque, for appellees.

Roberts & Roberts, Joseph A. Roberts, Santa Fe, for Carl D. Baker.

## OPINION

SOSA, Justice.

Plaintiff-appellant Margie Gooden, formerly Margie Baker [hereinafter Margie or Margie Gooden], sought to modify her final decree of divorce to correct a clerical error in the description of property in cause number 65,089 [hereinafter Suit 1]. In cause number 5–75–2434 [hereinafter Suit 2], plaintiffs-appellees Earl Baker, Olin Baker, and Stella Pillman sought to quiet title against Margie Gooden in the property which was the subject matter of Suit 1; she counterclaimed. Carl Baker, Margie's former husband, was made involuntary-plaintiff in Suit 2, and he crossclaimed. Since the property involved in both suits appeared to be the same, these two suits were consolidated and tried to the trial court without a jury. The trial court granted judgment against Margie Gooden in both suits. She appeals. Carl Baker cross-appeals.

Margie Gooden married Carl Baker in 1941. On January 5, 1948, Edith L. Miller (also known as Edith L. Hill and Edith L. Baker), Earl Wayne Baker, Viola Baker, his wife, and Olin George Baker conveyed title by warranty deed to Carl Baker of lots 1 and 2 of the Hamilton Addition [hereinafter Hamilton Lots], City of Albuquerque, New Mexico, as his sole and separate property. On August 18, 1951, Carl and Margie Baker executed a general power of attorney in favor of Edith L. Hill, which Edith recorded in Bernalillo County on July 22, 1952. That same day Edith Hill executed a warranty deed, conveying the Hamilton Lots to herself. On December 31, 1956 the trial court entered the final decree of divorce of Carl and Margie. The decree awarded Margie one-half interest in the "Lot lettered 'H' of the Aaron J. Smith Subdivision" [hereinafter Smith Lot], but it was further described as "now under lease to that business known as 'Five Points Market,' with a barber shop adjacent thereto . . . ." This latter description is in actuality the description of the Hamilton Lots, which was the only real property owned by the parties at that time. On March 19, 1957, Margie signed a revocation of power of attorney and recorded it on April 18, 1957. On April 18, 1957, Margie Gooden filed a complaint against Edith Baker in federal court, seeking to invalidate Edith's conveyance to herself of the Hamilton Lots and also seeking payment of accrued rent which Edith had been collecting for the Bakers. On May 29, 1958, by quitclaim deed Carl Baker granted his interest in the Hamilton Lots to Edith Baker, his mother. On June 23, 1958, Margie Gooden moved to dismiss the case against Edith without prejudice, and the judge so ordered. Edith Baker continued to manage the Hamilton Lots until her death. Edith Baker died without a will on March 22, 1972. On November 20, 1974, the probate court distributed Edith's estate, including the Hamilton Lots, as follows: one-third each to Earl Baker and Carl Baker, and one-sixth each to Stella Pillman and Olin Baker.

Margie Gooden argues the following issues on appeal: the trial court erred in holding or finding that (1) Edith properly acquired title to the Hamilton Lots under the power of attorney, (2) the divorce decree gave Margie a one-half interest in the Smith Lot rather than the Hamilton Lots, (3) Margie was estopped from asserting any claim in the Hamilton Lots, and (4) Edith adversely possessed the Hamilton Lots. As the last issue is determinative of this appeal, we do not need to discuss the other issues. The trial court held that Edith had acquired the Hamilton Lots by adverse possession, since she had continuously and for more than ten years adversely possessed the property under color of title and paid taxes thereon.

Margie argues that (1) the deed by which Edith conveyed the Hamilton Lots to herself is insufficient for the purpose of color of title because it was void and it failed to describe the Hamilton Lots in sufficient detail, (2) the adverse possession was not done in good faith, and (3) the possession was not adverse but rather permissive.

First, Margie argues that the deed conveying the Hamilton Lots to Edith (the 1952 warranty deed) was void because Edith breached her fiduciary duty of disclosure to Margie and Carl under the power of attorney. *Kribbs v. Jackson*, 387 Pa. 611, 129 A.2d 490 (1957); Restatement (Second) of Agency § 381 (1958); 3 Am.Jur.2d Adverse Possession Agency § 200 (1962). Whether the deed was void or merely voidable because of the breach of the fiduciary duty of the agent (Edith) to disclose material actions to the principals (Carl and Margie) need not be decided here, for a void or a voidable deed may be sufficient for color of title. See *Romero v. Garcia*, 89 N.M. 1, 546 P.2d 66 (1976). In any event, there is a second deed under which Edith claims color of title—the 1958 quitclaim deed, which is neither void nor voidable.[1] Second, Margie argues the description in the 1952 warranty deed is insufficient since that deed refers to Lots 1 and 2 in the Hamilton Addition but fails to designate which block they are in.[2] The trial court properly permitted extrinsic evidence to determine the property in question. See *Hughes v. Meem*, 70 N.M. 122, 371 P.2d 235 (1962); 3 Am.Jur.2d Adverse Possession § 108 (1962). The trial court determined that the Hamilton Lots were in block 2 of the Hamilton Addition.

■ Margie argues that there was an absence of good faith, since Edith violated her fiduciary duty of disclosure, and thus Edith could not have adversely possessed the tracts. *Apodaca v. Hernandez*, 61 N.M. 449, 302 P.2d 177 (1956). While this may be true with respect to the 1952 warranty deed, it does not apply to the 1958 quitclaim deed. There is no showing of bad faith with respect to that deed, thus this element was satisfied.

■ Finally, Margie argues that Edith's use of the Hamilton Lots was permissive, not adverse, and thus Edith's adverse possession must fail. The evidence is conflicting and must be resolved by the fact finder. The trial court as fact finder found that there was adversity. There is substantial evidence to support its finding. The remaining elements of adverse possession were not disputed. Thus, the trial court properly found that Edith adversely possessed the Hamilton Lots.

The judgment of the trial court is affirmed.

EASLEY, J., and GERALD D. FOWLIE, District Judge, concur.

---

1.  Cross-appellant Carl Baker challenged the validity of the quitclaim deed because it was not attested to by a notary public. See § 71–1–3, N.M.S.A.1953 (Supp.1975); *McBee v. O'Connell*, et al., 16 N.M. 469, 120 P.2d 734 (1911). The statute by its terms only prevents the recording of the deed and does not make it void. The general rule is that an unacknowledged deed is binding between the parties thereto, their heirs and representatives, and persons having actual notice of the instrument. See *Ebrite v. Brookhyser*, 219 Ark. 676, 244 S.W.2d 625 (1951); *Ballard v. Ballard*, 230 N.C. 629, 55 S.E.2d 316 (1949); *McQuatt v. McQuatt*, 320 Mass. 410, 69 N.E.2d 806 (1946); 1 Am.Jur.2d Acknowledgments § 4 (1962).

2.  Although not raised by Margie, this problem also arose with the 1958 quitclaim deed and the 1948 warranty deed.