624 P.2d 522

Dorothy BRYLINSKI,
Plaintiff-Appellant,

v.

Max COOPER et al., Defendants,

and

Peggy Hoyt Jones, Defendant-Appellee.

No. 12866.

Supreme Court of New Mexico.

Feb. 23, 1981.

Sutin, Thayer & Browne, Marianne Woodward, Albuquerque, for plaintiff-appellant.

Catron, Catron & Sawtell, John S. Catron, Santa Fe, for defendant-appellee.

## OPINION

EASLEY, Chief Justice.

Brylinski filed suit to quiet title to a farm of approximately 490 acres. Her title to all but eighty acres was uncontested. Jones challenged Brylinski's title to the eighty acres and sought to quiet title thereto. Brylinski and Jones filed cross-motions for summary judgment. The trial court entered judgment denying Brylinski's motion and granting Jones' motion for summary judgment by quieting title to the eighty acres in Jones. The trial court also ordered Jones to pay Brylinski the sum of $2,400 as refund of part of the purchase price paid by Brylinski's mother to Jones' mother under an agreement to purchase the eighty acres. Brylinski appeals. We affirm in part and reverse in part.

Three issues are presented in this appeal: (1) whether the description of the property contained in a tax deed by which Brylinski's predecessor-in-interest obtained the property was sufficient to convey legal title; (2) whether the tax deed supplied color of title sufficient to support a claim based upon adverse possession; and (3) whether a contract for purchase and sale of the disputed property between the litigants' predecessors-in-interest constituted the acknowledgement of a superior title, thus precluding application of the doctrine of adverse possession.

In 1937, the farm was owned by Clair Hawkins. Nonpayment of the 1937 taxes resulted in the issuance of a tax sale certificate and tax deed to the state. Brylinski's mother, Vera Smith, purchased the property from the state tax commission in 1962 and later conveyed to Brylinski in 1970.

Jones is the ultimate successor-in-interest of Clair Hawkins by inheritance. Jones claims that the tax sale to Vera Smith was void as to the eighty acres by reason of an

insufficient description of the property in the 1937 assessment which was carried forward into both the tax deed to the state and the deed from the state to Vera Smith.

The description of the relevant portion of the property which appeared in the 1937 assessment and the tax deeds to the state and Vera Smith is as follows:

NE ¼ N ½ *NE* ¼ E ½ of SE ¼ Sec. 35
* * * (Emphasis added.)

The parties agree that this description was erroneous and that the property should have been described in the assessment and the tax deeds as follows:

NE ¼, N ½ *NW* ¼, and E ½ SE ¼ of Section 35 * * * (Emphasis added.)

Vera Smith took possession of the farm, including the disputed eighty acres, in 1962, and remained in possession of the property until her death in 1978. Nevertheless, in 1968, Vera Smith entered into a contract to *purchase* the eighty acres from Alma K. Hoyt, Jones' mother and predecessor-in-interest. Vera Smith paid $2,400 toward the $4,400 purchase price. The contract was never completed for reasons not relevant to the dispute at hand. Both parties and their predecessors have paid the taxes on the property since Vera Smith entered into possession of the farm in 1962.

## 1. Validity of the Tax Deed

The trial court granted Jones' motion for summary judgment and issued an order quieting title to the eighty acres in Jones. Although no findings of fact or conclusions of law appear in the record, such a ruling was necessarily predicated upon a determination that the 1962 tax deed did not convey good title to Vera Smith. Thus the first question for review concerns the validity of the tax deed.

 In determining the validity of a tax deed, the first concern is the validity of the assessment. *Richards v. Renehan*, 57 N.M. 76, 253 P.2d 1046 (1953). This is because "[t]he assessment of property for taxation is one of the essential steps leading up to a sale for taxes. If an assessment is void it follows inevitably that the sale based

upon such assessment is likewise void." *Baltzley v. Lujan*, 53 N.M. 502, 506, 212 P.2d 417, 419 (1949). The test of validity is whether the description is sufficient, aided by data furnished by it, to identify the property. *Richards.*

 The only conclusion that can be drawn from the application of this test here is that the description in the tax rolls and tax deed was inadequate to identify the property. The substitution of "NE" for "NW" resulted in the identification of an entirely different parcel of property than that which was intended to have been assessed.

Brylinski argues that the description is ambiguous on its face because it is redundant and results in the identification of property considerably smaller than the 490 acres which is referred to in the deed from the county treasurer to the state. She contends that the ambiguity may be resolved by reference to the description of the property in the assessment rolls of prior and subsequent years.

We can find no support for her contention under existing New Mexico case law. In *Trujillo v. Dimas*, 61 N.M. 235, 297 P.2d 1060 (1956), this Court upheld the validity of a tax deed where the property "was correctly described on the tax rolls of the county for at least one of the [several] years for which the taxes were unpaid and delinquent, and for which the properties were sold on account of such delinquency." *Id.* at 238, 297 P.2d at 1066. This case thus does not stand for the proposition that an inadequate description may be cured by reference to the description contained in the tax rolls for years other than the year(s) of the delinquency for which the property was sold. *See also, Trujillo v. Montano*, 64 N.M. 259, 327 P.2d 326 (1958).

Brylinski cites to other cases in which extrinsic evidence was allowed to cure the inadequacy of a description in a tax deed. *Hughes v. Meem*, 70 N.M. 122, 371 P.2d 235 (1962); *Padilla v. Northcutt*, 57 N.M. 521, 260 P.2d 709 (1953); *Stevens v. Fincher*, 52 N.M. 52, 191 P.2d 350 (1948). Significantly, however, in each of these cases the extrinsic

evidence was referred to or identified in the deed description. As stated in *Richards, supra,* "the description must be sufficient, *aided by data furnished by it,* to identify the property." (Emphasis added.) 57 N.M. at 80, 253 P.2d at 1048.

■ The extrinsic evidence Brylinski offers to aid the description of the property is not identified or furnished by either the tax deed or the tax roll for the year of the delinquency in taxes for which the property was sold, and therefore cannot be used in aid of the description.

■ We hold that the tax deed was invalid under our existing case law, due to the insufficiency of the description contained in the tax deed and the assessment.

## 2. Color of Title.

Brylinski also claimed that she had acquired the property by adverse possession. Jones contends that this claim must fail because Brylinski and her predecessor, Vera Smith, lacked color of title due to the insufficiency of the description in the tax deed.

■ Our conclusion that the tax deed was invalid due to the insufficiency of the description of the property does not mean that the same deed cannot serve as color of title. *See Baker v. Baker,* 90 N.M. 38, 559 P.2d 415 (1977). Indeed, the very nature of the color of title requirement assumes that the document conveying title is invalid for one reason or another. Had the deed been valid, the claimant would have had no reason to resort to the doctrine of adverse possession to gain title to the property. But where the description in the deed, aided by extrinsic evidence, is insufficient to identify the property, the deed cannot serve as color of title. *See Richardson v. Duggar,* 86 N.M. 494, 525 P.2d 854 (1974); *Sanchez v. Garcia,* 72 N.M. 406, 384 P.2d 681 (1963). Thus the question here is what kinds of extrinsic evidence are admissible to cure the inadequacies of a deed description for the purposes of the color of title requirement.

Two lines of cases have evolved in New Mexico on this issue. Older cases generally imposed a strict requirement akin to that imposed for testing the validity of tax deeds. These cases held that only extrinsic evidence referred to or identified in the deed was admissible to aid the description of a deed for purposes of the color of title requirement. *See Sanchez v. Garcia, supra; Gutierrez v. Ortiz,* 58 N.M. 187, 268 P.2d 979 (1954); *Green v. Trumbull,* 37 N.M. 604, 26 P.2d 1079 (1933).

More recent cases have relaxed this rule to allow the introduction of evidence not referred to in the deed. *See Romero v. Garcia,* 89 N.M. 1, 546 P.2d 66 (1976); *Richardson v. Duggar, supra. Richardson* is quite similar to the instant case, involving a deed which identified the property as located in the "SE ¼ SE ¼" rather than the intended "SW ¼ SE ¼." The Court held that the deed was nevertheless sufficient to convey color of title because a surveyor could have ascertained what properties were intended to have been conveyed by checking evidence on the ground, such as growing crops, existing fences and the shape of the lot, by making inquiries of the grantors and grantees, and by the open possession of the property by the grantees without objection or complaint by the grantors. Obviously, this evidence is not of a type that would be referred to or identified by the deed.

The purposes of the doctrine of adverse possession have been stated as follows:

The establishment of title by adverse possession is said to be based on the theory or presumption that the owner has abandoned the land to the adverse possessor. [*Downing v. Bird,* 100 So.2d 57 (Fla. 1958); *Atlantic Coast Line R. Co. v. Seward,* 112 Fla. 326, 150 So. 257 (1933).] It has also been said that the doctrine of maturing title by adverse possession under color of title is that where one, in the exercise of ordinary care, is induced to enter upon and improve land because he has some written evidence of title that would naturally induce a layman to believe that it vested in him what it professed to pass, it would be unjust to enforce the right of another who brings no action until the end of the statutory peri-

od. [*Barrett v. Brewer*, 153 N.C. 547, 69 S.E. 614 (1910); *Stolfa v. Gaines*, 140 Okl. 292, 283 P. 563 (1929).]

3 Am.Jur.2d *Adverse Possession* § 2 (1962). [T]he doctrine of adverse possession * * * protects those who honestly enter and hold possession of land in the full belief that it is their own. [*McAllister v. Hartzell*, 60 Ohio St. 69, 53 N.E. 715 (1899).] *Id.* at § 1.

■ The doctrine of color of title is "a mere judicial fiction used in the administration of the statute in order to effectuate its full, fair, and just purpose * * * [*State v. King*, 77 W.Va. 37, 87 S.E. 170 (1915)]." *Id.* at § 105. The color of title requirement protects landowners from the unjust use of the doctrine of adverse possession by mere squatters or those who seek to aggrandize their holdings by appropriation. *See e. g., Baker v. Benedict*, 92 N.M. 283, 587 P.2d 430 (1978); *Thomas v. Pigman*, 77 N.M. 521, 424 P.2d 799 (1967).

We feel that the balance between the competing interests of the absent holder of legal title and the possessor of the property under some claim of right is best struck by our recent decisions which more freely allow the introduction of extrinsic evidence in aid of a deed containing an ambiguous or mistaken description. A possessor for the prescriptive period who has taken possession under a deed with a defective description may have as legitimate and sincere a claim to the property as the adverse possessor under a deed invalid due to a defect in the chain of title. The absent holder of legal title remains protected against squatters by the requirement that the possessor must show his claim of right by a document purporting to grant title and that contains a description of the property sufficient, with the aid of extrinsic evidence, to locate the property.

■ We are mindful that the test of the validity of a deed is stricter for a tax deed than for a deed *inter partes*. *Richards v. Renehan, supra*. This is so that (1) the owner may have information of the claim made upon his property; (2) the public may be notified what property is offered for sale; and (3) the purchaser may obtain a sufficient conveyance. *Heron v. Ramsey*, 45 N.M. 483, 117 P.2d 242 (1941). We feel, however, that this doctrine has no application to the color of title requirement because the interests of the assessed owner, the public, and the purchaser are adequately served by compliance with all elements of the doctrine of adverse possession. A landowner might fairly complain where his land is sold following an improper assessment. But he has no just cause for complaint where the purchaser has openly possessed the property under color of title for the prescriptive period and paid taxes thereon.

■ We therefore hold that a genuine issue of material fact exists as to whether the description in the tax deed, aided by extrinsic evidence, is sufficient to identify the property in dispute for the purpose of supplying color of title.

### 3. Acknowledgement of Superior Title.

In 1968, Vera Smith and Alma Hoyt entered into a contract entitled "Good Faith Payment and Agreement to Purchase" whereby Smith agreed to purchase the disputed property from Hoyt. Jones contends that this contract constituted an acknowledgement of superior title and that Smith's possession from 1968 on was permissive and not hostile by reason of this contract.

■ The generally accepted rule is that the purchase of or offer to purchase an outstanding title, interest, or claim to land by an adverse holder thereof will not of itself interrupt the continuity of his adverse possession. See cases collected in 3 Am. Jur.2d, *supra* at § 85 n. 6. New Mexico law is in accord with the general rule. As early as *Chambers v. Bessent*, 17 N.M. 487, 134 P. 237 (1913), this Court so held, stating:

"Each case will depend upon its own facts and circumstances, and the intention of the parties as to whether the fact of purchase is intended as an acknowledgement of the true title or a mere effort to extinguish an adverse claim; and the solution does not depend merely upon the question whether the party

from whom the purchase is made or attempted is or is not the true owner." *Id.* at 496, 134 P. at 240. The Court held that the offer to purchase the property from the legal owner by the adverse possessor did not constitute acknowledgement of a superior title in the absence of any evidence of a contrary intent.

Review of the record in this case reveals no evidence indicating that Vera Smith acknowledged the superior title of Alma Hoyt. The scant evidence of intent indicates, if anything, that the contract was intended as a good will gesture in order to facilitate Smith's negotiations with Hoyt to purchase another, larger and unrelated, parcel of property.

■ We hold that, in the absence of any evidence to the contrary, the contract did not constitute the acknowledgement of a superior title and did not interrupt the continuity of adverse, hostile possession during the prescriptive period. A genuine issue of material fact therefore exists as to this element of adverse possession.

The order granting summary judgment quieting title to the property is reversed. The order denying Brylinski's motion for summary judgment is affirmed. The cause is remanded for trial on the merits.

IT IS SO ORDERED.

PAYNE and FEDERICI, JJ., concur.