163 P.2d 632

## WALLACH v. PADDOCK et al.

### No. 4904.

Supreme Court of New Mexico.

Nov. 13, 1945.

George T. Harris, A. D. Williams, and C. M. Neal, all of Hobbs, for appellant.

Lee R. York, of Hobbs, and Reed Holloman, of Santa Fe, for appellees.

LUJAN, Justice.

This action was instituted by plaintiff to enforce specific performance of a written land contract for the sale of individual interests in surface and mineral estates.

The plaintiff's complaint, among other things, alleged that on the 20th day of August, 1943, the defendants entered into a written contract with the plaintiff for the sale by defendants to plaintiff of their interests in the surface and mineral estates; that plaintiff thereafter tendered the agreed purchase price to the defendants and each of them; that the defendants and each of them refused to accept the same and have failed and refused to convey said property, and still refuse so to do, or to comply with the terms of their contract; that plaintiff is ready, able and willing to purchase said property and to pay to defendants the agreed purchase price therefor, but that he is unable to do so because of the refusal as aforesaid; and that plaintiff makes tender and offers to pay into court the full purchase price stipulated in said contract.

The defendants, by their answer, admit that they signed the contract, but they deny that it thereby became binding on them, and by way of new matter allege that the defendant, Mrs. Alice Paddock, advised the plaintiff from the very beginning that all of the heirs would have to agree to the sale, because she did not want any controversy among the heirs and that she would not sell her interest unless they would all sign, and that this was repeated the day she signed the contract; that the contract was blank in so far as the other parties were concerned and that she signed it without investigating its terms; that plaintiff further advised her, and all of the other defendants, that the contract would not be effective until all of the heirs signed it; that the defendant, Mrs. Alice Paddock, is a very aged woman and is childish, and her mind is greatly impaired and she is unable to enter into an intricate contract with anyone; that plaintiff falsely and fraudulently promised that he would get all the heirs to sign the contract before it became effective, without any intention of carrying the same out; that defendants relied on the promises made by plaintiff, otherwise they would not have signed the same; that the contract is tainted with fraud and plaintiff is not in court with clean hands; and that by virtue of said mistake, oversight or fraud, the parties' minds did not meet, and that the contract is therefore null and void and of no force and effect.

In his reply to the new matter set out in defendant's answer, plaintiff specifically denied said allegations.

On direct examination, the defendant, Mrs. Alice Paddock, testified as follows:

"Q. How old are you? A. Seventy-six years old.

"Q. Did he say something about Mr. Sims having some of your land fenced in? A. Yes, sir, that was what he talked about first, and then I said I would rather not sell but would rather lease.

"Q. Did you finally tell Mr. Wallach you would sell the land to him? A. Yes, sir, after he kind of insisted on it; he said he would rather buy than lease.

"Q. What did you tell him about the heirs? A. I said I would not sell without all the children signed and I wanted to sell it all, I would not sell a part of it. I did not want just one-half of it.

"Q. Did you tell him how many children and heirs there were who would have to sign? A. I could not tell you exactly the number of heirs there were but I said they were scattered so it would take some time to get the papers fixed up.

"Q. Did he say anything about how long it would take to get it fixed up? A. Yes, sir, I said it would take a long time to get it around; something like two years he said it would take to get them all signed.

"Q. Did you tell him they would all have to sign it? A. Yes, sir, and that it would have to be satisfactory with the children before I would sign it.

"Q. Did he say anything that day about the children treating you wrong? A. Not that day. * * *

"Q. Would you have signed that contract if you had not thought it was going around to all the heirs? A. No, sir, it was my understanding it was going to go around to all the children, and I told him where all the children lived and as to who my grandchildren were. I wrote and got the others' names because I knew he was going to send it around for I wrote to some of the grandchildren about it."

On cross-examination she testified as follows:

"Q. He first came there and got you and Annie McLaughlin? A. Yes, sir.

"Q. Did you and Annie McLaughlin read the contract then before you signed it? A. I did but I did not understand it. * * *

"Q. How long after you and Annie McLaughlin and Wesley Paddock had signed it till Dessie Montgomery had signed it? A. She signed it that very evening. When we signed the first paper, me and Mr. Wallach got her and she signed it that evening and she said 'Well, I do not want to sign it,' and I said, 'Well, I will sell my part whether you sell yours or not.'

"Q. Did you not tell Mr. Wallach there was one child who you thought would not sign it and that was one Ollie Houston who lived in Oregon? A. She wrote and said she would sign anything I would send her; he would not give me time to get an answer from her. He never did ask me no more about it whether she had signed it or not. * * *

"Q. Is it not a fact that Mr. Wallach is willing to go ahead and buy them out if he can buy them, and he has told you repeatedly since the execution of this con-

tract that if he would get them he would still buy theirs? A. He told me the last time he was down there, he said, 'Whenever I will get yours I can get theirs.' I said, 'I do not want it that way; I am not satisfied the way thing are going; I want to rescind this thing and take it back like it was.' I said, 'You have not got the children to sign these papers, and I want them all to sign it so I am not satisfied. I thought I was selling all of it; I did not want to sell just a part of it.'

"Q. When you came back from San Angelo is when you changed your mind about the contract? A. Yes, sir, when I got back and he accused the children of not treating me right, and he said to Dessie, 'You are not treating your mother right', and I said, 'It is not the children as they are loyal to me and I have not wanted for anything yet.'"

. At the conclusion of the testimony, the court below made findings of fact and conclusions of law, as follows:

"No. 7. That said contract was drawn by the attorney for the plaintiff to be signed by all of the heirs of Elijah P. Paddock, and at the time he drafted it the names of only a few of the heirs were known and blank spaces were left for the purpose of inserting the names.

"No. 8. That said contract was signed by the plaintiff and by the defendants in this action, but it was known by the parties signing said contract that there were other heirs owning interest therein, and the contract was signed and given into the possession of the plaintiff by the defendants in this cause upon the express condition that it should not become effective unless and until it had been signed by all of the heirs.

"No. 9. That said contract was not signed by the other heirs and that the defendants herein refused to further proceed."

"No. 12. That the plaintiff has not shown that he does not have an adequate remedy at law, or that the property is worth more than he contracted to pay for it, or that he has suffered any loss.

"(a) That plaintiff is not entitled to a decree of specific performance;

"(b) That the cause should be dismissed at the plaintiff's cost."

Plaintiff seeks review of a judgment rendered against him below dismissing his complaint. While three separate errors are assigned, they reduce themselves to but one for the purpose of presentation in argument, i. e., that the testimony of Mrs. Alice Paddock, to the effect that she intended to sell the land to the plaintiff regardless of the action of the other interested party, constituted a judicial admission binding upon said defendant and entitled plaintiff to judgment as against such defendant.

It will be noted that Mrs. Alice Paddock, in answer to a question propounded to her on cross-examination, stated that she told her daughter, in the presence of the plaintiff, that she would sell her part of the land whether the daughter sold hers or not. If the above testimony was all that appeared, the admission, if it be an admis-

sion, would be conclusive on her; but it was not all. In the light of other portions of the record, this testimony is not conclusive upon the defendant. A party defendant in such a case is not necessarily bound by a statement, in the nature of an admission, made in cross-examination, which is inconsistent with the direct testimony, or with other facts and circumstances in evidence.

In 31 C.J.S., Evidence, § 381, par. 4, p. 1175, the writer states as follows:

"A statement in the testimony of a party consisting of a mere informal admission not made to limit the issues or do away with proof is considered in some cases as having prima facie force but not being conclusive so as to prevent disputation by declarant. *So a party is not concluded by a statement in the nature of an admission made on cross-examination which is inconsistent with the direct testimony, or with the other facts and circumstances in evidence.*" (Emphasis ours.)

The statement here claimed by the plaintiff to be conclusive against the defendant, Mrs. Alice Paddock, constituted a part of her testimony as a witness on the trial of the cause. Considered as a statement against her interest, it was not an admission, distinct and formal in character, nor was it made for the purpose of dispensing with the formal proof of any fact at the trial. The testimony of all the other defendants "that it was understood by them and the plaintiff that all of the heirs would have to sign the contract before a sale was made," was substantially the same as that given by the defendant, Alice Paddock, with the exception of the single statement complained of. See Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864; United States to Use of Elias Lyman Coal Co. v. United States Fidelity Guaranty 83 Vt. 278, 75 A. 280; Wigmore on Evidence, 3rd Ed., Vol. 9, Sec. 2588, p. 586; Culberson v. Chicago, M. & St. P. Ry. Co., 50 Mo.App. 556; Ephland v. Missouri Pac. Ry. Co., 57 Mo.App. 147; Mathis v. Tutweiler, 6 Cir., 295 F. 661; Wiley v. Rutland Ry. Co., 86 Vt. 504, 86 A. 808; Cox v. Jones, 138 Or. 327, 5 P.2d 102; Rowe v. United Rys. Co., 211 Mo.App. 526, 247 S.W. 443; Houston v. Chicago, etc., Ry. Co., 118 Mo.App. 464, 94 S.W. 560; Myers v. Chicago B. & O. Ry. Co., 171 Mo.App. 283, 157 S.W. 362; Thorpe v. Missouri Pac. Ry. Co., 89 Mo. 650, 2 S.W. 3, 58 Am.Rep. 120; and Shepherd v. St. Louis Transit Co., 189 Mo. 362, 87 S.W. 1007.

We hold, therefore, that the statement made by the defendant, Alice Paddock, during the course of her testimony, was not in the nature of a judicial admission, having conclusive effect in law.

The sole question raised and relied on by appellant for a reversal is without merit. The judgment should be affirmed and it is so ordered.

MABRY, C. J., and SADLER, BICKLEY, and BRICE, JJ., concur.