**297 P.2d 1060**

M. A. TRUJILLO, Ascencion S. Trujillo, Max Trujillo and Joe E. Trujillo, **Plaintiffs-Appellants,**

v.

George P. DIMAS, Paul L. Davis, Mary Frank Davis, Stanolind Oil & Gas Co., State of New Mexico, Horace F. McKay et al., **Defendants-Appellees.**

No. 5989.

Supreme Court of New Mexico.

April 14, 1956.

Rehearing Denied June 18, 1956.

E. P. Ripley, Santa Fe, Noble, Spiess & Noble, Las Vegas, for appellants.

Seth & Montgomery, Catron & Catron, Santa Fe, for appellees.

SADLER, Justice.

This is an appeal by the appellant, M. A. Trujillo, who was plaintiff below, from a judgment of the district court of Rio Arriba County rendered in a suit to quiet title, refusing to quiet title in him and quieting title instead in the defendants to four certain tracts of land designated in the pleadings as 8, 10, 11 and 12. The parties will be designated here as they were below.

The original complaint was filed on January 3, 1953, to be superseded subsequently by the first amended complaint filed on February 12, 1953. The defendants, Horace F. McKay and Elmyra McKay, his wife, duly filed their answer to plaintiff's original complaint, and thereafter an answer to plaintiff's amended complaint, together with a counter-claim against plaintiff seeking to quiet title in them to real estate, as follows:

(a) NE¼NW¼, N½NE¼ and SW¼-NE¼, Section 28; E½SW¼, NW¼SW¼ and SW¼SE¼, Section 21; T. 28 N., R. 5 W., N.M.P.M., being designated as Tract No. 8 in plaintiff's first amended complaint.

(b) SW¼SW¼, N½SW¼, Section 14; NE¼SE¼, Section 15; T. 29 N., R. 7 W., N.M.P.M., being designated as Tract No. 11 in plaintiff's first amended complaint.

(c) N½SE¼, SW¼SE¼, and SE¼-SW¼, Section 14; T. 29 N., R. 7 W., N.M.P.M., being designated as Tract No. 10 in plaintiff's first amended complaint.

(d) S½NW¼, Section 14; S½NE¼, Section 15; T. 29 N., R. 7 W., N.M.P.M., being designated as Tract No. 12 in plaintiff's first amended complaint.

A delinquent tax sale was held in Rio Arriba County on January 19, 1942, of properties upon which taxes were delinquent for the years 1937 through 1940, inclusive. It was conducted by the treasurer of said county. Included in the property offered for sale at that time, to be sold on account of non-payment of taxes, were the separately described properties hereinabove

set out. On the 5th day of the sale there having been no other bidders therefor, all of the properties above described were, by operation of law, sold to the State of New Mexico.

Each of the properties contained in the several designated tracts was correctly described on the tax rolls of the county for at least one of the years for which the taxes were unpaid and delinquent, and for which the properties were sold on account of such delinquency. In due course, the two-year period allowed by law for the redemption of the property sold for delinquent taxes expired, to wit, on January 23, 1944. None of the properties so sold was redeemed from the sale within the period provided by law for such redemption.

There was no fraud, actual or constructive, committed by the officer selling the properties, or by his predecessors in office, either prior to, at the time of, or after the sale thereof, for delinquent taxes.

Subsequent to the foregoing delinquent tax·sale held in the month of January, 1942, and in the month of April of said year, the property described as Tract No. 8 was sold at an administrator's sale to raise money to pay expenses of administration and delinquent taxes thereon and purchased by the plaintiff, M. A. Trujillo. The proceeds of the sale having been turned over to the administrator in exchange for a deed to the premises the money was ordered paid into the registry of the court by the trial judge and was never employed to redeem Tract 8 from the tax sale aforesaid.

The facts recited above, however, did not relieve the plaintiff, as purchaser at the judicial sale, from the duty and obligation to pay the taxes thereon, or from redeeming or repurchasing same in the manner prescribed by law. No fraud was committed by the district court upon the plaintiff, in any respect in so far as said property is concerned in relation to the judicial sale mentioned.

There was no proper or valid tender by the plaintiff to the county treasurer of Rio Arriba County to pay the taxes on any of the property contained in any of said tracts for the years for which they were sold for delinquent taxes. Neither was there ever any proper or valid tender to redeem the properties in said tracts, or any of them, from the sale thereof for delinquent taxes. Nor did the plaintiff, or any predecessor in interest or title, make a timely application to the state tax commission of New Mexico to purchase or repurchase said properties or any of them.

Thereafter, the property hereinabove described and known as Tract No. 8 was duly and legally sold and conveyed by the state tax commission to George P. Dimas by deed dated February 16, 1948, one of the defendants herein, and recorded August 12, 1948, in Book 36, page 120, of the records of deeds of Rio Arriba County. This property was thereafter conveyed by him to defendants and counter-claimants, McKay, by in-

strument dated January 1, 1949, recorded February 7, 1949, in Book 36, page 532, of the records of deeds of said county. The McKays are the present owners of said property.

In due season, thereafter, the property described hereinabove as Tract No. 10, excepting the oil and gas and other minerals in and under SE¼SW¼, Section 14, T. 29 N., R. 7 W., N.M.P.M., was duly and legally sold and conveyed by the state tax commission to the defendants and counter-claimants, McKay, by deed dated January 17, 1948, recorded in Book 35, page 97, of the deed records of Rio Arriba County. Following acquisition of title by the McKays to the property in this paragraph described, they conveyed the surface rights therein to the plaintiff, M. A. Trujillo, reserving unto themselves all of the oil, gas, minerals and mineral substances in said property, together with the right to take all usual, necessary or convenient means for prospecting, working, getting and removing the oil, gas and/or other minerals, including the free right to enter upon said premises, together with other rights in connection with said mineral interests.

Thereafter, the property described hereinabove as Tract No. 11 was duly and legally sold and conveyed by the state tax commission to George P. Dimas, one of the defendants herein, by deed dated April 28, 1948, and recorded August 12, 1948, in Book 35, page 118, of the records of deeds of Rio Arriba County. The said Dimas, thereafter, conveyed the property to defendants and counter-claimants, McKay, by deed dated January 1, 1949, and recorded February 7, 1949, in Book 36, page 533, of the records of deeds of said county. The McKays, in turn, conveyed the surface rights in the property in this paragraph mentioned to M. A. Trujillo, plaintiff herein, reserving unto themselves the minerals thereunder and the usual rights relating to such minerals.

In like fashion, the state tax commission conveyed the property known and described as Tract No. 12, hereinabove, excepting an undivided one-half interest to the oil and gas and other minerals in and under SE¼NW¼ of Section 14, T. 29 N., R. 7 W., to the defendants and counter-claimants, McKay, by deed dated January 7, 1948, recorded in Book 35, page 197, of the records of deeds of said county. The McKays, in turn, conveyed the surface rights in the property in this paragraph described to plaintiff, M. A. Trujillo, reserving unto themselves the minerals thereunder together with the usual rights relating to such minerals.

The McKays abovementioned are the present owners in fee simple of all the oil, gas and other minerals in and under the lands hereinabove described as Tracts 10, 11 and 12, excepting the oil, gas and other minerals under SE¼SW¼, Section 14, T. 29 N., R. 7 W., N.M.P.M., and excepting an undivided one-half interest to the oil and gas and other minerals under SE¼-

NW¼ of Section 14, T. 29 N., R. 7 W., subject to certain oil and gas leases mentioned below.

In failing to pay the taxes on the properties here involved for the years for which said properties were legally sold and in failing to effect a timely redemption thereof from the sale for delinquency, neither the plaintiff nor his predecessors in title or interest acted in reliance on representation or misrepresentation of whatever kind or nature by the treasurer of Rio Arriba County, his agents or employees, relative to the taxes on the properties mentioned for any material year, or relative to the sale of said property for delinquency.

The Stanolind Oil and Gas Company is the owner and lessee of a valid oil and gas lease dated January 8, 1948, from George P. Dimas and Paul L. Davis appearing of record in Book 3, page 406, Oil and Gas Records of Rio Arriba County. The lease mentioned was assigned by Paul L. Davis and wife to Stanolind Oil and Gas Company by assignment dated February 2, 1948, recorded in Book 3, page 572, of the Oil and Gas Records of Rio Arriba County. The lease and assignment mentioned cover the following land situated in Rio Arriba County, to wit:

"NE¼NW¼, N½NE¼ and SW¼-NE¼, Section 28; E½SW¼, NW¼-SW¼ and SW¼SE¼, Section 21; T. 28 N., R. 5 W., N.M.P.M., containing 320 acres."

The Stanolind Oil and Gas Company is also the owner and lessee of a valid oil and gas lease dated December 24, 1947, from George F. (P.) Dimas to Paul L. Davis, appearing of record in Book 3, page 366, Oil and Gas Records of Rio Arriba County, which lease was assigned by Paul L. Davis and wife to defendant, Stanolind Oil and Gas Company, by assignment dated December 30, 1947, recorded in Book 3, page 584, of the Oil and Gas Records of Rio Arriba County. The lease and assignment described cover the following lands situated in Rio Arriba County, to wit:

"SW¼SW¼ and N½SW¼, Section 14; NE¼SE¼, Section 15; T. 29 N., R. 7 W., N.M.P.M., containing 120 acres".

Stanolind Oil and Gas Company is also the owner of a valid oil and gas lease dated December 24, 1947, from Horace F. McKay, Jr., and Elmyra K. McKay to Paul L. Davis, appearing of record in Book 3, page 363, Oil and Gas Records of Rio Arriba County, which lease was assigned by Paul L. Davis and wife to Stanolind Oil and Gas Company by assignment dated December 30, 1947, recorded in Book 3, page 489, Oil and Gas Records of Rio Arriba County, and by assignment dated April 6, 1953, recorded in Volume 14, page 593, Oil and Gas Records of Rio Arriba County. The lease and assignments just mentioned cover the following lands situated in said county, to wit:

"N½SE¼ and SW¼SE¼, Section 14, T. 29 N., R. 7 W., N.M.P.M., containing 120 acres"

The Stanolind Oil and Gas Company, likewise, is the owner and lessee of a valid oil and gas lease, dated December 24, 1947, from Horace F. McKay, Jr., and Elmyra K. McKay to Paul L. Davis, appearing of record in Book 3, page 365, Oil and Gas Records of Rio Arriba County which lease was assigned by Paul L. Davis and wife to defendant, Stanolind Oil and Gas Company, by assignment dated December 30, 1947, filed in Book 3, page 588, of the Oil and Gas Records of Rio Arriba County. The lease and assignment just described cover the following land situated in Rio Arriba County, to wit:

"An undivided one-half interest in and to the SE¼NW¼ and all of the SW¼NW¼, Sec. 14, and S½NE¼, Sec. 15, T. 29 N., R. 7 W., N.M.P.M., containing 160 acres"

The plaintiff, M. A. Trujillo, pursued a separate and deliberate plan to evade payment of taxes on the lands involved herein for the years material hereto. The defendant, Stanolind Oil and Gas Company, paid a valuable consideration for the issuance execution and delivery of the leases covering lands herein involved, in good faith and without notice of any claims or defenses made by plaintiffs in this action.

Having found the facts as hereinabove recited the court concluded that there was no fraud, actual or constructive, committed by the county treasurer of Rio Arriba County, his agents or employees, upon the plaintiffs, or any of them, or upon their predecessors in interest or title, nor was there any fraud, actual or constructive, committed by the officer selling the properties herein involved for delinquent taxes, or by the purchaser at the sale of said properties.

The court went on to conclude that there was no fraud, actual or constructive, committed by the state tax commission of the State of New Mexico, or any of its officers, agents or employees, upon plaintiffs, or any of them, or upon their predecessors in interest or title. The conclusions of the trial court, likewise, acquitted the district court of the First Judicial District of the State of New Mexico, in and for the County of Rio Arriba, and its agents and employees, of committing any fraud, actual or constructive, upon the plaintiffs, or any of them, or their predecessors in interest or title with respect to any of the properties involved.

All of the properties involved were subject to taxation for the years material hereto, except the several mineral interests heretofore excepted in the court's findings. The properties involved were duly and legally sold for delinquent taxes and no redemption of any of them from the sale was effected within the time allowed by law.

It was further concluded that no timely application to purchase or repurchase the properties, or any of them, was made by

plaintiffs, or any of them, or by their predecessors in interest or title in the manner prescribed by law before said properties had been sold by the state tax commission to other applicants. It was a further conclusion of the court that the sales of said properties by state tax commission to George P. Dimas and counter-claimants, McKay, were, in all respects, legal and valid sales.

Accordingly, it was concluded by the court that counter-claimants, McKay, are the owners in fee simple of the lands hereinabove described in subparagraph (a), subject to outstanding oil and gas lease, as aforesaid. Likewise, that said counter-claimants, McKay, are the owners in fee simple of the oil, gas and other minerals in all those properties described in subparagraphs (b), (c) and (d) of finding No. 2, other than those properties specifically excepted in the court's findings, subject to outstanding oil and gas leases as aforesaid; and, that the said counter-claimants, Horace F. McKay, Jr., and Elmyra McKay, his wife, are legally entitled to and should be granted the relief prayed by them in their counter-claim.

The court concluded, nevertheless, that as to those certain tracts described in subparagraphs (b), (c) and (d) of finding No. 2, the title of plaintiff, M. A. Trujillo, to the surface rights only should be quieted, subject, however, to the rights of mineral owners to the legitimate use of such surface in connection with the mineral rights.

The court concluded, also, that defendant, Stanolind Oil and Gas Company, was entitled to judgment quieting its leasehold rights, title and interest in and to the lands hereinabove described as to which it was found to hold leases.

It was finally concluded by the trial court that plaintiff's first amended complaint and the counter-claim of defendants, McKay, and Stanolind Oil and Gas Company should be dismissed as to the following oil and gas and other mineral interests, to wit:

"All in and under the SE¼SW¼, and an undivided one-half interest in SE¼SW¼, Section 14; T. 29 N., R. 7 W., N.M.P.M."

Having found the facts and drawn conclusions of law from the facts so found, the court on, to wit, December 17, 1954, made and entered its final decree in said cause in conformity therewith, from which the plaintiffs have appealed to this Court for a revision and correction of the decree in so far as the same relates to said above described Tracts Nos. 8, 10, 11 and 12, or any of them.

It will perhaps contribute to a readier understanding of a truly complicated appeal if from an overall view of the whole case, we choose what seem to us are the basic questions presented which, if resolved in plaintiff's favor, as to any one of them, will sustain his position as to all four tracts involved, and having determined them, then move on to a consideration of questions

which relate to only one, or more, of the tracts, or affect any of them only indirectly.

■ We thus approach, as the first question to be considered, the sufficiency of the descriptions appearing on the assessment rolls upon which tax deeds 2133–C, 2171–C, 2138–C, 2120–C and 2182–C are based. We shall deal first with Tract No. 8. It should be borne in mind that the lands involved in this tract were sold for delinquency in the payment of taxes for the years 1937, 1938, 1939 and 1940. Thus it is that if the description on the assessment rolls for any one of the years involved was sufficient, any inadequacy of description in any other of the years would be immaterial. De Gutierrez v. Brady, 43 N.M. 197, 88 P.2d 281.

As a typical example of the assessments complained of, we will take up Tract 8, challenged by plaintiff, and give it as it appears for 1938 in the Teofilo Lopez Heirs (owned by plaintiff). It appears assessed to Teofilo Lopez Heirs in School District 63, Rio Arriba County, Post Office Serving Governador, New Mexico, the following:

| | Sec. | Twp. | Rge. |
|---|---|---|---|
| NE¼NW¼; N½NE¼; SW¼NE¼; | 28 | | |
| E½SW¼; NW¼SW¼; SW¼SE¼; | 21 | 28 | 5W |
| SE¼NE¼; NE¼SE¼; | 28 | 28 | 5W |
| NW¼; N½SW¼; | 27 | 28 | 5W |

The description of the legal subdivisions within sections 28 and 21 as shown in the first two lines are correct.

We continue with the assessment of this tract through the succeeding years involved, viz., 1939 and 1940. Counsel for defendants have given a fair portrayal of the situation in their brief with the contention made by plaintiff each year as to Tract 8 for 1939 and 1940 which we take the liberty of employing. On the 1939 tax roll, page 217, lines 18–19, there appears assessed to Teofilo Lopez Heirs in School District 63, Rio Arriba County, Post Office Serving Governador, New Mexico, the following:

| | Sec. | Twp. | Rge. |
|---|---|---|---|
| NE¼NW¼; N½NE¼; SW¼NE¼ | 28 | | |
| E½SW¼; NW¼SW¼; SW¼SE¼ | 21 | | |
| SE¼NE¼; NE¼SE¼ | 28 | | |
| NW¼; N½SW¼ | 27 | 28 | 5W |

Here, again, the legal subdivisions in sections 28 and 21, on the first two lines, are correct.

Appellants state that the 1940 assessment is identical with that of 1939, shown above, except that SW¼NE¼ Section 21 is added.

Appellants' contention as to the assessment of 1937 is that even that portion of the description shown to be correct in the second line is insufficient to identify the property because the township and range are not shown opposite the section number.

As to the 1938 assessment, appellants' contention is that though the description of the subdivisions in section 28 in the first line is correct, the description is insufficient to identify the property because the township and range are not shown opposite the section number on this line. Further, that though the description of the subdivisions on the second line in section 21 are correct, the description is in-

sufficient because it is not shown whether the township is north or south.

As to the 1939 assessment, appellants' contention is that though the descriptions of the subdivisions in sections 28 and 21 in the first and second lines are correct, the descriptions are insufficient to identify the property because no township or range is shown opposite the section number.

This same contention applies also to the assessment of 1940.

Like objections are made touching assessments as to the other Tracts (10, 11 and 12) for one or more of the years involved, either because the township and range is not set opposite the section number on the same line, even though it may appear below in summary, or because it is not shown whether the township is north or south, where shown on the second line.

The challenge made ' by the plaintiff through his counsel in this behalf, touching insufficiency of the description, is to Finding No. 5 made by the trial court, reading as follows:

"That each of the properties contained in each of said designated tracts, was correctly described on the tax rolls of the county for at least one of the years for which the taxes were unpaid and delinquent, and for which said properties were sold on account of delinquency."

■ We think the trial court correctly ruled on the sufficiency of the descriptions found on the assessment roll for the years involved as to each of the properties or tracts, to wit, Tracts Nos. 8, 10, 11 and 12. Perhaps, it would put the matter more accurately if we say, as we do, that Finding No. 5, supra, so vigorously challenged by plaintiff, touching the questioned descriptions is supported by substantial evidence.

■ When we come to consider sufficiency of the descriptions we can not ignore, nor could the trial court, the fact that each and every assessment involved described the property as located in "Rio Arriba Co., School Dist. No. 63, Post Office Serving Governador, N. M." Obviously, the trial court in making the questioned finding considered this a part of the description as well as the congressional subdivisions given, namely, that the property was located in Rio Arriba County. Furthermore, the trial court knew judicially the location of Rio Arriba County, geographically, and as well that of the New Mexico Principal Meridian, crossing the state well south of the southerly line of Rio Arriba County, a fact disclosed on any map of New Mexico. Thus informed, the court properly determined that all townships in Rio Arriba County are "north".

One need only refer to 1953 Comp. § 21-1-1(44) (d), subsections 2 and 8, to demonstrate that the courts of New Mexico are directed to take judicial notice of:

A. Whatever is established by law.

B. The geographical divisions of the world.

Furthermore, a mere examination of the tax rolls offered in evidence (plaintiff's own Exhibits 22 to 42, incl.) discloses not only that it was the practice in the office of the assessor of Rio Arriba County to omit any designation of "north" or "south" opposite township numbers, but also that such practice was, in effect, considered and recognized as proper by the state tax commission.

Coming now to the failure of the assessor to carry out township and range numbers opposite the section numbers in the descriptions on the tax rolls of:

Tract 8 for the year 1938 in the first line opposite the section number 28;

Tract 11 for the years 1938 and 1939 in the first line opposite the section number 14.

In order to clarify this argument we set out here the 1938 assessment of the congressional subdivisions as they appeared on the assessment roll, for Tracts 8 and 11:

*Tract 8*

NE¼NW¼; N½NE¼; SW¼NE¼ Sec. 28

E½SW¼; NW¼SW¼; SW¼NE¼ Sec. 21, Twp 28 Rge 5 W.

*Tract 11*

N½SW¼; SW¼SW¼ Sec. 14
NE¼SE¼ Sec. 15 Twp 29 Rge 7 W.

It is to be observed that the township and range are not given directly opposite sections 28 and 14 on the same line. It is obvious, however, that in each instance the township and range opposite the description on the second line are related back to and become a part of the description on the first line, when the whole description is read continuously as, properly, it should be. The trial court, unquestionably so read the descriptions. See, Burdick v. Connell, 69 Iowa 458, 29 N.W. 416; Griffin v. Tuttle, 74 Iowa 219, 37 N.W. 167.

Richards v. Renehan, 57 N.M. 76, 253 P.2d 1046, 1047, is relied upon by appellants as supporting their claim of insufficiency of the description here involved. We think it is not in point on its facts. The real question in the Richards case was sufficiency of the description of the subdivisons in the section involved to identify the subdivisions themselves. No such question is presented here since, for the material years, the descriptions of the subdivisions within the section involved are concededly correct. We do, however, find support in Richards v. Renehan, supra, for the appellees' contention as to failure of the descriptions to show whether the township is north or south. Among other things, the court said:

"The plaintiff's first two points on this appeal assert the official plats of public surveys filed in the United States Land Office are the necessary and sole guides for the determination of the location and area of any tract of land surveyed under the system of public surveys; that the abbreviations 'T.' and 'Twp.', 'R.' and 'Rge.' must be taken to mean, respectively 'Township'

and 'Range'; *and that since all townships are north and all ranges east in Santa Fe County, the court may by judicial notice complete the descriptions in the assessment rolls and tax deeds* to read 'Township 16 North, Range 9 East, N.M.P.M.'

"The defendant concedes *the general recognition of these principles.*" (Emphasis ours.)

■ We think the failure to say whether the township was north or south under present facts was not fatal. Knapp v. Josephine County, 192 Or. 327, 235 P.2d 564, and Keller v. Chournos, 102 Utah 535, 133 P.2d 318, 322. In the latter case, the court said:

"The descriptions of the property from the beginning of these tax proceedings are attacked by appellant as incomplete and insufficient. It may be said, in so far as the facts in this case are concerned, that the failure to state that the township was 'north' and the range 'west', where those omissions are shown, was not fatal, inasmuch as the property is clearly shown throughout to be located at Promontory, in Box Elder County, Utah, directed from Salt Lake Meridian, and that these designations must of necessity be 'north' and 'west', respectively, and the court would be authorized to and justified in taking judicial notice of such facts, provided the descriptions were otherwise acceptable; * * *."

The next important question presented by the plaintiff on this appeal is that the pretended sales, not alone of Tract No. 8 but, also, of all three other tracts involved, and the tax deeds upon which defendants and counter-claimants rely, are each and all, null, void and of no effect by reason of futile efforts on the part of plaintiff to redeem from such sales before the period of redemption had expired. He asserts he was prevented from doing so by constructive fraud on the part of the county treasurer. As already shown, the sale of these properties for delinquent taxes took place in January, 1942. They were sold for delinquency for all or two or more years over a four-year period from 1937 to 1940. Accordingly, the two-year period of redemption expired on January 23, 1944, which was two years from fifth day of the delinquent tax sale.

There was testimony by the plaintiff, however, that in December, 1943, and as well in December, 1944, as for that matter, he visited the county treasurer's office, taking with him his deeds and made an effort to pay taxes on all these properties, but was prevented doing so because, as he claimed, the county treasurer declined to issue him receipts correctly describing his lands, after refusing to strike from the rolls the assessments as they stood because of inaccuracies and errors of description contained therein, and entering on the rolls what he claimed were correct descriptions, as taken from deeds said to be in his possession at the time.

Of course, it is what transpired in December, 1943, that is important since in December, 1944, the period of redemption had expired nearly a year before, to wit, in January, 1944. The witness, Frank Garcia, who was then county treasurer, testified that the plaintiff visited his office in December, 1943, for the first time, bringing with him certain deeds and stated he wanted to pay his taxes on the properties described in the deeds. As to the four tracts here involved they had already been sold for delinquency nearly two years before. The plaintiff interposed as a condition to the payment of the taxes that receipts be issued to him describing the properties as set out in his deeds. The treasurer informed him he could only issue receipts to cover the taxes as found on the rolls and was without authority to change such assessments as they so appeared without a court order. Touching this phase of the case, the treasurer testified:

"Q. And why didn't he pay his taxes? A. Those taxes that he didn't pay, he wanted me to—the descriptions were, as I said, complicated, and then he asked if I could give him a receipt with the correct description he had on his deeds and strike the taxes on the roll and make a different entr*ance* and I could not do it."

It is to be remembered that the so called "complication" in the descriptions in one respect, at least, arose on the fact that the plaintiff after acquiring ownership of these tracts had permitted them to continue to be assessed in the names of former owners and, in some instances, of omissions of township and range numbers opposite section numbers, as hereinabove shown. To be sure, the descriptions of some tracts are actually garbled on the rolls. In the main, however, and more especially in so far as these four tracts are concerned, correct descriptions for one or the other of the years for which the properties were sold appeared on the rolls, as the trial court expressly found.

During the presence of the treasurer, Frank Garcia, on the stand, testifying as to what transpired on the visit to his office by plaintiff in 1944, the court, itself, took over, and examined him and elicited the following testimony, to wit:

"Court. Do you remember how many pieces of property he wanted to pay the taxes on? A. Not the exact number, but there were quite a few tracts.

"Court. Just why did he not pay them? A. Because the descriptions were not correct, if I remember right.

"Court. You mean they were assessed under different names? A. Not under different names, but the description, townships and sections and ranges, in some records, they were not in the records.

"Court. If Mr. Trujillo had offered to pay the taxes for each specific year

beginning 1937, on each piece of property, and coming down through 1943, could you have accepted the money? A. I could have accepted the money as it was in the tax rolls, yes.

"Court. Is the reason you did not accept the money was because he put the condition that you make corrections? A. Yes.

"Court. On the receipt or rolls? A. On the rolls.

"Court. And you could not make the correction? A. I could not make the correction without a court order."

■ Thus, even as long ago as a year following his first visit in December, 1943, the county treasurer again confirmed what he already had previously testified concerning the plaintiff's insistence that the assessments be stricken, as they appeared on the rolls and others substituted in conformity with descriptions to be taken from deeds which the plaintiff had in his possession. True enough, the treasurer by later testimony sought to modify the scope of what he earlier had said touching the condition attached by plaintiff to his offer to pay taxes if, indeed, the later testimony was not confined to what took place at the time of his December, 1944, visit. The record so indicates. At all events, it was for the trial judge to appraise the facts and say when the witness's testimony was truthful and accurate. Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864; Wallach v. Paddock, 49 N.M. 317, 163 P.2d 632; Kutz Canon Oil & Gas Co. v. Harr, 56 N.M. 358, 244 P.2d 522.

Further background for the court's findings in this behalf appears from the testimony of several witnesses, among them James Paulantis, a member of the bar of this state, relative to a conversation with the plaintiff concerning his taxes. The conversation took place in the room of counter-claimant McKay at the Presbyterian Hospital in Albuquerque in April, 1948, on the occasion of plaintiff's visit there for purpose of purchasing back from Mr. McKay surface rights on Tracts 10, 11 and 12. The following is an excerpt from the examination of Mr. Paulantis at the trial, to wit:

"Q. At that time was there any discussion, or did the question come up, over the sale of these properties for taxes? A. Yes, sir, it did.

"Q. What was that discussion? A. There was a discussion that Mr. McKay had purchased the properties described in the deeds from the State of New Mexico, and that he was going to sell the surface rights to Mr. Trujillo and Mr. Trujillo requested that, I believe he stated that, he knew that it was only a tax deed, and then someone inquired of Mr. Trujillo why he did not pay the taxes and Mr. Trujillo's reply was that he laughed and said there was an administration in the tax office in Rio Arriba County that was

adverse to his political beliefs and as soon as the administration changed, the tax rolls would be fixed up to his satisfaction.

"Q. Was there any other comment that was made at that time with reference to the failure of Mr. Trujillo to pay his taxes, that you remember? A. No, sir, other than that he knew he had not paid them and that Mr McKay had a tax deed * * *.

* * * * * *

"Q. Did Mr. Trujillo on either of those occasions make any statement in your presence that he had tried to pay any of his taxes before the property was sold for taxes? A. I never heard him make that statement.

"Q. That he had tried to redeem the property from the tax sale? A. No, sir.

"Q. Was his only comment that which you related with reference to what would happen when the administration changed? A. He had a considerable sum in cash, and that is how the question came up as to why if he had the money he had not paid the taxes and then he made that reply that in the change of administration it would all be taken care of."

The plaintiff, himself, recalled as a witness virtually confirmed what Mr. Paulantis had testified to in this behalf. Witnesses Caroll Payne and Horace F. McKay, Jr., who were present on this occasion both testified in substance to what Mr. Paulantis did. The witness, Payne, testified:

"Q. Did he make any other remark about not having paid the taxes? A. He said he had not tried to.

"Q. Did he say why? A. He said that he thought that sooner or later one of his amigos would be in office and he could get his taxes marked paid and his titles cleared up. Before that happened, Mr. McKay bought these tax deeds, so he was trying to get them from him."

The testimony of Horace F. McKay, Jr., as to what was said by plaintiff on that occasion touching this subject follows:

"Q. During the course of that meeting, did any question come up as between you and Mr. Trujillo with reference to his payment or nonpayment of the taxes on the property involved in this case and his reasons for paying or not paying? A. It did come up.

"Q. What transpired in that respect? A. He stated at that time he had not paid his taxes, he had not attempted to pay, because he was waiting for a change in administration, of one of his friends to go in, and they would mark all the rolls paid and I had purchased the property before that change had taken place, and he was now trying to buy it."

We must give it as our settled judgment that substantial evidence supports the trial court's findings and conclusion that there was no fraud, actual or constructive, practiced on the plaintiff by the county treasurer in connection with plaintiff's efforts to pay taxes on the four tracts of land which are the subject of this appeal. It is strongly argued, however, by the plaintiff that statutory authority existed for the treasurer to comply with the request made on him to correct the descriptions, and thus meet the condition interposed in the asserted offer of plaintiff to pay the taxes. 1953 Comp. §§ 72-4-6 and 72-8-3 are cited in support of this claim.

It is true that under section 72-4-6 obvious clerical errors may be corrected by the treasurer under certain language reading:

"The tax roll when delivered to the county treasurer, properly verified by the affidavit of the county assessor, and properly certified by the county commissioners, as required by law, shall constitute his authority to collect the taxes therein set forth and he shall not be held liable for any irregularity or illegality in any of the proceedings prior to his receiving said assessment roll *and the amounts to be paid as taxes as shown by said assessment roll shall not be altered, reduced or in any manner changed, except by direction of the district or Supreme Court; but this prohibition shall not extend to the cor-rection of obvious clerical errors in name, description of property or computation of amount of taxes.* If the treasurer shall discover any errors of other kinds in said assessment roll by which any injustice would be done to any taxpayer, it shall be his duty to report the same to the district attorney; * * *." (Emphasis ours.)

And, again, under section 72-8-3 the treasurer is authorized, upon finding any property upon which taxes have become delinquent to be erroneously described or omitted from tax rolls, to "correct any errors of description and assess any omitted property," etc.

The trouble with this argument is that the errors, such as existed, would scarcely classify as "obvious clerical errors" under section 72-4-6. How could the fact that the lands in Tract No. 8, assessed to "Teofilo Lopez Heirs," was the property of M. A. Trujillo, the plaintiff, appear as an "obvious" clerical error, or, necessarily, as an error at all—and the same as to Tract No. 10, assessed to Abelino E. Lovato, Tract No. 11 to Manuel Lovato and No. 12 to Manuel Vallejos? Nor could the provisions of section 72-8-3 be invoked by the treasurer to warrant him in assessing any of these four tracts as "omitted" property for any of the years sold for delinquency since they appeared on the rolls, correctly described, as the trial court found with substantial evidence to support the finding, for at least one of the years for which sold.

■ Not only has the plaintiff (appellant) sought to nullify the tax deeds by reason of claimed fraud on the part of the county treasurer but by reason of claimed fraud on the part of state tax commission. In both instances, the trial court found against him. We have recited at some length certain of the facts relied upon as constituting fraud at the county treasurer level and have held the evidence substantial in support of the trial court's findings touching the charge. The evidence put forward as proof of fraud at the state tax commission level is even less persuasive.

Concerning such evidence counsel for the appellees (counter-claimants) assert "that it does not show either clearly and convincingly, or clearly and conclusively, or clearly and satisfactorily, that Mr. Trujillo made application to repurchase, or to purchase, this property prior to the receipt and acceptance of a third party bid," etc. The trial court expressly found that neither the plaintiff, nor any predecessor in interest or title, made a timely application to the state tax commission to purchase or repurchase the properties involved, or any of them. It has support.

Testimony relied upon by plaintiff in this behalf rests on a visit to the state tax commission in 1945 by the plaintiff and what then transpired between him and two female employees in the office, serving in a clerical capacity, and the testimony of these three parties concerning same. Even if plaintiff's testimony be accepted at its face, it would certainly be of doubtful sufficiency to constitute a valid tender of funds to purchase, or repurchase, any of these tracts. It was the function of the trial court to appraise plaintiff's testimony along with that of the only two employees contacted by plaintiff, for evidences of fraud. Each of the two clerical assistants gave testimony of an uncertain and indefinite character. Indeed, the testimony of one of them left the distinct impression it was not until after March, 1946, when she first was assigned duties of this character, that Mr. Trujillo visited the office. We do not feel warranted in overturning the findings of the trial court in this behalf.

■■ We are not unmindful that fraud on the part of the county treasurer, either actual or constructive, will suffice to avoid a tax title and save property from forfeiture. 1953 Comp. § 72–8–20. Kershner v. Sganzini, 45 N.M. 195, 113 P.2d 576, 134 A.L.R. 1290, and Scudder v. Hart, 45 N.M. 76, 110 P.2d 536. But as held in Lile v. Lodewick, 53 N.M. 511, 212 P.2d 422, one seeking to set aside a tax title on the ground of fraud, actual or constructive fraud, in giving out erroneous information, has the burden of establishing such fact by clear and convincing evidence, a mere preponderance will not suffice. See, also, Greene v. Esquibel, 58 N.M. 429, 272 P.2d 330; and Lamb v. Manley, 58 N.M. 292, 270 P.2d 706. Compare Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299. So it is that we must sustain the trial court's findings against

252

fraud at either level, that of the county treasurer and, as well, at the state tax commission level.

 But it is said the tax titles involved are all bad, null and of no effect because no tax sale was ever held, or completed, in Rio Arriba County in December, 1942. Unfortunately, for plaintiff's contention on this score, the trial court found against him on the issue. There is substantial evidence to sustain its finding in the testimony of the then county treasurer, Garcia, who held the sale. Incidentally, this same claim of invalidity was made and denied concerning the identical tax sale in Rio Arriba County in the cases of Greene v. Esquibel, supra; McMillan v. Meharg, 55 N.M. 556, 237 P. 2d 359, and Brown v. Gurley, 58 N.M. 153, 267 P.2d 134.

Finally, it is strongly urged by counsel for plaintiff that, as to Tract No. 8, the purported sale is invalid and wholly ineffective by reason of the fact that the property was *in custodio legis* when sold, thus rendering the tax proceedings as against the property a nullity. The facts out of which this claim arises are that in April, 1942, more than two months after Tract No. 8 had been sold for delinquency in the payment of taxes for 1937, 1938, 1939 and 1940, a suit was filed in the district court of Rio Arriba County to sell this land for the specific purpose of raising money with which to pay certain obligations, viz., expenses of administration on the estate of the former owner, the decedent, including taxes.

 The plaintiff, Trujillo, discharged the purchase price, $1,550, and it was ordered paid into court by the judgment in the suit. The property was sold subject to taxes, but for the express purpose of satisfying the taxes. After paying the expenses of administration, there remained on hand $1,349.32 which the judgment ordered the clerk to retain in her hands "subject to the further order of the court." Unfortunately, this money was never employed to redeem the property from the tax sale which had been held some eight months prior to the administrator's deed and the plaintiff insists this nullified the tax sale and rendered ineffective the expiration of the equity of redemption against the property.

Both parties cite and rely upon our decision in Hood v. Bond, 42 N.M. 295, 77 P.2d 180. Undoubtedly, each of them can find comfort in certain portions of the language to be found in our opinion in that case. Actually, we were spared the necessity of speaking decisively on the question now discussed. It is our considered judgment, however, that our decision in the Hood case, more especially the language of cases we there quote approvingly, speaks more persuasively in favor of the position of defendants and counter-claimants on the precise issue involved on the present facts. We so hold. The trial court did not err in ruling as it did on this question.

In conclusion, let us say this has been a most difficult appeal to comprehend and reduce within permissible bounds to a clear

statement of the factual issues with a declaration of controlling legal principles applicable thereto. The task has been made more difficult by lengthy briefs aggregating nearly 300 pages in extent, two volumes of transcript comprising 425 pages, plus a mass of original exhibits consisting of innumerable photostatic copies of assessment rolls, tax certificates and tax deeds, abstracts, etc., all in such numbers that one becomes lost in endeavoring to encompass them, mentally, in their relation to the vital issues sought to be placed before us in reviewing the judgment complained of. There is always the danger, in such circumstances, of becoming so enmeshed in the mass of documents that, to speak figuratively, one "can not see the forest for the trees."

We sincerely trust, however, we have centered on the vital issues involved and that we have correctly determined them. We believe we have. After all, very largely the major issues turn on the sufficiency of the evidence to sustain the trial court's findings. While unquestionably the plaintiff-appellant, Trujillo, gave direct and affirmative testimony, of efforts on his part to pay his taxes, corroborated in some respects by that of the then county treasurer, Frank Garcia, the truth or not of their testimony was for the trial court to determine. Certainly, there was ample evidence in the record, if believed, to sustain the trial court's findings that there was no fraud, actual or constructive, either at the level of the county treasurer, or that of the state tax commission, and that the plaintiff, Trujillo, pursued a separate and deliberate plan to evade payment of the taxes on the lands involved for the years material thereto.

There may be some ancillary questions presented on this appeal which we have not expressly determined. We think any such are resolved by what we have said. Either they are so resolved, or we have found them to be without merit.

The judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.