611 P.2d 1099
Wilfred GALLEGOS and Marie Lorraine
Gallegos, Plaintiffs-Appellants,

v.

C. H. QUINLAN, Dora S. Quinlan and
Quinlan Ranches, Inc., a Colorado Cor-
poration, Defendants-Appellees.

No. 12655.

Supreme Court of New Mexico.

May 29, 1980.

Weisfeld & Wallner, Eugene W. Weisfeld,
Taos, for plaintiffs-appellants.

Brandenburg & Johnson, Clifford J.
Johnson, Taos, for defendants-appellees.

## OPINION

PAYNE, Justice.

Plaintiffs Gallegos brought suit to be de-
clared the fee simple owners of property
that they alleged defendant Quinlan had
fraudulently obtained by tax deed from the
State of New Mexico. Quinlan received his
tax deed in 1959. He filed a quiet title suit
in which a decree was entered in his favor
in 1961. The Gallegos' acquired their claim
of title eighteen years later, in 1977 and
1978, through deeds received from the heirs
of Elmer Davis and John Pearson. The
United States Government had given Davis
and Pearson the first patents on the land.
The Gallegos' asked that the quiet title de-
cree in favor of Quinlan be set aside and
moved for summary judgment. Quinlan
counterclaimed and also asked for summary
judgment. The trial court granted summa-
ry judgment in favor of Quinlan. We af-
firm.

On appeal, the Gallegos' contend that summary judgment was improper because of a genuine issue of fact that existed concerning whether the original tax deeds, upon which Quinlan based his quiet title suit, were obtained by fraud.

The original patentees never recorded the property and never had the property assessed for taxes. Quinlan, whose property abutted and partially surrounded the property in question, began a search prior to 1955 to determine the ownership in the hope that he could purchase the property. He could find no evidence of who owned the property in any of the county records, but learned the names of the original patentees from the United States Government. He made at least some attempt to locate them. In 1955, Quinlan went to the Taos County Assessor's Office to have the property entered for assessment of unpaid taxes in order to precipitate an eventual tax sale. Quinlan maintains that he presented the true owners' names for assessment, but the tax schedules listed him as the owner of the property. Quinlan paid no taxes on the property after it was assessed in his name, and in March 1959 the land was deeded to the state for unpaid taxes. In December 1959 Quinlan purchased the property from the state by paying back taxes and penalties. The deed which Quinlan received from the state erroneously listed him as the original owner. The sale of the property by the state was made during a period when, by statutory limitation, only the previous owner was entitled to obtain the land by repurchase. §§ 72–18–31 and 32, N.M.S.A. 1953 (current version at §§ 7–27–6 and 7, N.M.S.A.1978).

Quinlan's suit to quiet title on the property was based upon the tax deed. Quinlan and his successor, a closely held corporation, have exercised ownership of the land since that time.

The Gallegos' allege that the defendant misrepresented himself as the original owner to obtain the repurchase preference provided to previous owners in the sale of land for unpaid taxes. They claim that if such actions constitute fraud, the quiet title suit

must be set aside. Quinlan alleges that there was insufficient evidence of fraud to overcome the motion for summary judgment and argues that, by virtue of the intervening eighteen years, the statute of limitations for contesting tax deeds has long since run.

■ We do not reach, nor rule upon, the arguments of either party. A tax deed obtained by fraud may be attacked without regard to the statute of limitations. Fraud vitiates the conveyance when the fraud is shown by clear and convincing evidence. See Trujillo v. Dimas, 61 N.M. 235, 297 P.2d 1060 (1956). However, the Gallegos' have no standing to assert a claim in this case.

■ The method by which the state obtained title to the land is not an issue. Under Section 72–8–15, N.M.S.A.1953 (repealed by N.M.Laws 1974, ch. 92, § 34), the county, immediately upon the expiration date of the redemption period, executes tax deeds to the state for all unredeemed property that is sold to the state. The fact that the property was assessed in the wrong owner's name did not make the deed issued by the county to the state defective. The applicable statute in effect at that time, Section 72–8–14, N.M.S.A.1953 (repealed by N.M.Laws 1974, ch. 92, § 34), states: "No sale of any real property, land or lot, or parts thereof, or any property for delinquent taxes shall be considered invalid on account of its having been charged on the tax rolls in any other name than that of its record owner . . . ." The state obtained a good title to the land and the original patentees lost it. The Gallegos' predecessors had neither assessed the land nor paid taxes thereon. They cannot attack the state's title. Therefore, any title or interest that the Gallegos and their predecessors in interest held was lost and they have no standing to assert a claim in this case.

■ This action brought by the Gallegos' is similar, in relevant part, to a quiet title action, wherein a party may prevail only on the strengths of their own title and not through the weakness of their adversary's title. Baker v. Benedict, 92 N.M. 283, 587

P.2d 430 (1978); *Jackson v. Hartley*, 90 N.M. 428, 564 P.2d 992 (1977); *Lerma v. Romero*, 87 N.M. 3, 528 P.2d 647 (1974); *Heron v. Conder*, 77 N.M. 462, 423 P.2d 985 (1967). In the instant case, the Gallegos' have no title or interest in the property. Thus, they can raise no claim against the title of Quinlan. Summary judgment against the Gallegos' was proper for the reasons stated. We do not reach the merits of Quinlan's title.

We affirm.

IT IS SO ORDERED.

EASLEY and FELTER, JJ., concur.